422 So.2d 618 (1982)
Nora SIMS, Plaintiff & Appellant,
v.
Obie G. SIMS, Defendant & Appellee.
No. 82-254.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
*619 J.P. Mauffray, Jr., Jena, for plaintiff & appellant.
Daryl Gold, Leesville, for defendant & appellee.
Before CULPEPPER, DOMENGEAUX and GUIDRY, JJ.
CULPEPPER, Judge.
This is a child custody dispute. In the above numbered suit, Mrs. Nora Sims petitioned the court for writ of habeas corpus directed to Obie G. Sims to recover the physical custody of her son, Jamie, and for child support arrearages and attorney's fees. This suit was consolidated for trial with Suit No. 82-255, 422 So.2d 623, in which Mr. Sims sought a change of custody of the minor child in his favor. A separate judgment is being rendered in that suit by us this day.
After trial on the merits, the district court rendered judgment dismissing the petition for a writ of habeas corpus in the mother's suit and awarding a change of custody in favor of the father in his suit. The judge took the action for child support arrearages under advisement. Later, judgment was signed awarding the plaintiff-appellant, Nora Sims, $116 in child support arrearages and $650 attorney's fees. From these judgments, Mrs. Sims appeals, urging the following specifications of error: (1) The trial court erred in changing legal custody of Jamie to Mr. Sims and denying Mrs. Sims' writ of habeas corpus. (2) The trial court erred in failing to award Mrs. Sims the full amount of support arrearages from the date of last payment through the date of rendition of the judgment changing custody. (3) The trial court erred in failing to award Mrs. Sims attorney's fees in the sum of $2,400.

FACTS
Mrs. Nora Sims petitioned the trial court for divorce on January 23, 1976. The petition sought custody of the minor child of the marriage, Jamie, born in 1973, and $100 monthly child support. A preliminary default was entered on February 23, 1976 and confirmed on March 1, 1976, when a Judgment of Divorce awarding Mrs. Sims custody of Jamie and $100 monthly child support was rendered in open court. This judgment was signed on March 15, 1976 and was not appealed.
Subsequent to the divorce, in 1976, Mrs. Sims instituted a URESA proceeding in Vernon Parish against Mr. Sims for nonpayment of child support. As a result, Mr. Sims paid three $100 child support payments while residing in Alaska, and an additional $200 child support sometime after his return to Louisiana. In May of 1977, *620 Mr. Sims paid another $100 child support to Mrs. Sims.
In January, 1977, Mrs. Sims applied for enlistment in the United States Air Force in an attempt to improve her earning ability, which was quite limited since she had only a basic high school education and very little training or experience. At the time of her application, Air Force regulations required a single parent to relinquish unconditionally his or her custody of any minors for the period required to complete basic training and technical school. Therefore, on April 5, 1977, Mrs. Sims obtained an ex parte order of the Vernon Parish Court transferring custody of the minor to her mother, Mrs. Anna Lois Roberts, on April 5, 1977. However, Mrs. Sims retained actual physical custody of the child.
Around July 5, 1977, when Mrs. Sims began her basic training, she delivered the physical custody of Jamie to Mr. Sims with the agreement that he would have the physical custody of the child while she completed her basic training and technical school. At the end of October, 1977, she returned from technical school to her duty station at England Air Force Base in Alexandria to find that Mr. Sims had moved, with Jamie, to Clute, Texas. Approximately one month later, Mr. Sims moved back to the Monroe area and filed a petition for change of custody in the Fourth Judicial District Court for Ouachita Parish. This suit went to trial on the merits resulting in a judgment in favor of Mr. Sims by the Fourth Judicial District Court, which judgment was later reversed by the Second Circuit Court of Appeal on the grounds of improper venue. Sims v. Sims, 388 So.2d 428 (La.App.2d Cir.1980). Mr. Sims' writ application was denied by the Louisiana Supreme Court on November 29, 1980.
In the meantime, in May of 1978, plaintiff-appellant's mother, Mrs. Roberts, petitioned the court in Vernon Parish to transfer custody back to Mrs. Sims, and she obtained an ex parte order to that effect.
On December 17, 1980, Mr. Sims filed suit in Vernon Parish for change of custody. In January of 1980, Mrs. Sims began a tour of duty in Okinawa from which she returned on January 5, 1981. Upon her return, she filed the instant petition for a writ of habeas corpus on January 13, 1981. This suit was consolidated for trial with Mr. Sims' suit of December 17. Trial on the merits was held on September 8,1981, and the trial court rendered judgment on the issue of custody in favor of Mr. Sims, denying the application for a writ of habeas corpus, reasoning that this would serve the best interest of Jamie to preserve what he found to be a happy and stable environment.
The issue of support arrearages was taken under advisement, and written reasons for judgment were rendered by the trial court on February 9, 1982, in which it was held that Mrs. Sims was entitled to recover support from the date of the March, 1976 divorce judgment until the rendition of the ex parte decree transferring custody from Mrs. Sims to Mrs. Roberts. Mr. Sims was to be given credit for the payment of the aggregate of $600, which was the total sum he was shown to have paid from the time of the initial judgment through the date of trial. Thus, judgment was to be allowed in favor of Mrs. Sims in the sum of $716. However, when the actual judgment was written and signed, it provided for only $116 in support arrearages against Mr. Sims.
The court further awarded to Mrs. Sims attorney's fees in the sum of $650.

CUSTODY
The appellant argues that the trial court was in error in granting custody of Jamie to Mr. Sims because the only reason for the change was the fact that Jamie had been in Mr. Sims's physical custody for over four years. Counsel for Mrs. Sims argues that this is improper because the reason Mr. Sims had Jamie so long was the mistake of the trial judge in the Ouachita Parish suit in overruling her exception to venue.
LSA-C.C. article 157 provides that custody shall be granted in accordance with the best interest of the child. It is well settled that the trial court's determination of what *621 is in the best interest of the child must be accorded great weight by the reviewing court and may be overturned only upon a clear showing that the trial judge abused this discretion. As stated by the Louisiana Supreme Court in the recent case of Bagents v. Bagents, 419 So.2d 460 (1982):
"In performing its function of deciding custody cases, the trial court is vested with a vast amount of discretion. On appellate review, great deference must be accorded to the decision of the trial court, not only because of that court's better capacity to evaluate witnesses, but also because of the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973)."
We recognize that Mrs. Sims had good intentions in her initial agreement to allow Jamie to live with Mr. Sims. She was struggling to make a home for herself and her child, and availed herself of a reasonable opportunity to increase and improve her earning capacity. This she has succeeded in doing. Her situation is now much improved. She lives in base housing in a three bedroom quadra-plex, and makes a monthly salary which would be sufficient to adequately support herself and Jamie. She has not remarried.
The fact remains, however, that Jamie has been in the care and custody of his father since July 5, 1977. They have lived in Lafayette for 2½ years. Jamie has been going to the same school since the first grade. He is involved in several different activities outside school. It appears from the record of his interview with the trial judge that Jamie is an intelligent, well-adjusted child, and is very settled in his home in Lafayette.
Mr. Sims has advanced in his job in the last few years and makes a more than adequate salary to provide for his family. He has been remarried for five years, and Jamie and the present Mrs. Sims have a good relationship.
Jamie stated that he is happy in his home in Lafayette. Adding to this the fact that the present situation provides a stable two-parent household, and the fact that Jamie is well cared for, we find no abuse of discretion in the trial court's refusal to disturb the stability of young Jamie's life.
The mother argues on appeal that it would be a bad precedent to change custody to the father for the sole reason that he has been able to improperly retain physical custody of the child for approximately four years, first by moving with the child to Texas and later by filing suit for a change of custody in a court of improper venue in Ouachita Parish. Our answer to this argument is that the trial judge correctly decided this case on the basis of what he considered to be the best interest of the child. Each child custody case should be decided on its own facts to protect the best interest of the child, regardless of whether this rewards or penalizes the actions of one of the parents during the custody dispute.

SUPPORT ARREARAGES
The appellant contends that the trial court judgment with regard to support arrearages was error because no judgment was ever rendered by any court terminating the March 1, 1976 judgment ordering Mr. Sims to pay $100 per month child support. She argues that she should therefore receive child support for the entire period without regard to the fact that Jamie has been in the care and custody of Mr. Sims since July of 1977. We disagree.
The trial court held that Mrs. Sims is entitled to child support from the date of the March, 1976 judgment to April 5, 1977, the date on which she transferred custody of Jamie to her mother by ex parte order of the court. It is well settled that ex parte child custody orders by trial courts are without effect. Saizan v. Saizan, 311 So.2d 281 (La.App. 1st Cir.1974); Simon v. Calvert, 289 So.2d 567 (La.App. 3rd Cir.1974), writ denied, 293 So.2d 187 (La.1974).
While we are reluctant to allow the person obtaining such a decree to plead the nullity thereof, we are also cognizant of the fact that it was secured by the mother solely for the purpose of complying with *622 Air Force regulations. Actually, Mrs. Sims retained the physical custody of Jamie until she began her basic training in July of 1977. The grandmother never had actual custody at any time.
We see from the record that around this time, Jamie on two occasions spent almost a month with his father, but also note that Mr. Sims continued to make some child support payments to the plaintiff as the custodial parent. It was not until July 5, 1977 that Mrs. Sims actually agreed to place Jamie in his father's custody for the period of time during which she was to be in basic training and would be unable to care for him. We therefore feel that Mrs. Sims is entitled to recover child support up to the time she and Mr. Sims agreed that he would have custody of Jamie.
It was settled by the Louisiana Supreme Court in Dubroc v. Dubroc, 388 So.2d 377 (La.1980) that agreements by which one parent suspends his right to compel the other to make payments for the child's maintenance are enforceable under certain circumstances. In that case, the court stated:
Since the parent's duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended.3 There is no prohibition, however, expressed by the law against a spouse's agreement to suspend his right to compel the other parent without custody to turn over to him in advance money necessary for the child's maintenance. Of course, an essential prerequisite to such a conventional modification of a parent's right to receive support payments is implied. The parent may not, by suspension of this right, thwart the purpose for which the right is established, i.e., the enforcement of the child's right to support and upbringing.
For these reasons, an agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable."
This court reiterated the foregoing tenet in Lachney v. Lachney, 399 So.2d 731 (La. App. 3rd Cir.1981), wherein we held that such principles are likewise applicable to a situation where the mother's right to custody has been divested by order of a court of competent jurisdiction and simultaneously vested in the father who assumes full responsibility and does in fact provide for the child's maintenance and upbringing.
Louisiana courts have further held that child support was suspended by implied agreement even when the mother did not specifically agree to the suspension of payments, where it was found that the mother delivered the physical custody of the child or children to the father who provided directly for their support. In such cases an implied agreement has been found due to the mutual understanding between the parents that the father would assume sole responsibility for feeding, clothing and sheltering the child or children in his care. See Matter of Andras, 410 So.2d 328 (La.App. 4th Cir.1982); LeGlue v. LeGlue, 404 So.2d 1268 (La.App. 4th Cir.1981); Pierce v. Pierce, 397 So.2d 62 (La.App. 2d Cir.1981).
We find, as did the trial court, that such an agreement existed in the instant case. It was agreed that Mr. Sims would care for Jamie in his home, and feed, clothe and support him directly, for as long as Mrs. Sims was unable to meet her responsibility in this regard. This agreement began when Mrs. Sims delivered physical custody of Jamie to his father on July 5, 1977. Therefore, Mrs. Sims is entitled to payment of child support arrearages due for the period from March 1, 1976 through July 5, 1977. The total amount due for this period was *623 $1516. We also find, as did the trial court, that Mr. Sims should receive credit for the payment of $600 in child support payments as evidenced by the record. Therefore, Mrs. Sims is entitled to a judgment against Mr. Sims in the sum of $916 in child support arrearages.

ATTORNEY'S FEES
The trial court awarded the mother $650 attorney's fees. Appellant contends that this award is inadequate and that the $1200 prayed for was a reasonable sum. On appeal, it is argued that $2400 would be reasonable for the services rendered at both the trial and appellate courts.
We agree with the trial court that the record shows most of the litigation had to do with the issue of custody, and that $650 was a reasonable sum to award as attorney's fees on the action to make past due child support executory. We feel that an additional $300 should be awarded for services rendered by the mother's attorney on appeal.
For the reasons assigned, the judgment appealed in the present suit by the mother for a writ of habeas corpus and for child support arrearages and attorney's fees is amended to increase the child support arrearage due to the sum of $916, and increase the award for attorney's fees to $950. Otherwise, the judgment in the present case is affirmed. All costs of this appeal are assessed one-half to appellant and one-half to appellee.
AFFIRMED, AS AMENDED.