434 So.2d 654 (1983)
Dorothy Ellen BAGBY, Plaintiff-Appellant,
v.
John Hugh DILLON, Defendant-Appellee.
No. 83-162.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
*655 Love, Rigby, Dehan, Love & McDaniel, Kenneth Rigby, Shreveport, Onebane & Associates, Arthur A. Vingiello and Lawrence Donahoe, Jr., Lafayette, for plaintiff-appellant.
Cole, Guidry & Prather, Robert L. Cole, Bernard E. Beyt and Janice Beyt, Lafayette, for defendant-appellee.
Before FORET, CUTRER and LABORDE, JJ.
FORET, Judge.
The main issue of this appeal is whether the unambiguous provisions of a final judgment awarding alimony pendente lite (or child support) may be altered by parol or other evidence in a subsequent proceeding to enforce that judgment.
Dorothy Bagby (plaintiff) brought a rule to make past-due alimony (child support) executory[1]. Named defendant is her former husband, John Hugh Dillon.
*656 The trial court, after hearing the rule, rendered judgment in favor of defendant, denying plaintiff's claim. We affirm.

FACTS
By judgment dated October 11, 1977, the trial court decreed a separation "a mensa et thoro" between the parties. Plaintiff was granted custody of the minor children (William Daniel Dillon and Roberta Ellen Dillon) born of her marriage to defendant. That judgment also contained the following provision:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that JOHN HUGH DILLON, be and he is hereby condemned to pay alimony for the support and maintenance of Dorothy Ellen Bagby in the amount of ONE THOUSAND FIVE HUNDRED AND NO/100 ($1,500.00) DOLLARS per month."
Approximately one month after this judgment was rendered, Roberta moved out of plaintiff's home and went to live with defendant. Thereafter, defendant reduced his alimony (child support) payments to plaintiff by $300 per month. Defendant again reduced his payments to plaintiff in June of 1980 by $300 per month, when he believed that William had reached the age of majority. Actually, William reached this age in September of 1979. Defendant made both of these reductions without obtaining a court order to that effect.
Some five years after the above mentioned judgment was rendered, plaintiff instituted the present action to make past-due alimony (child support) executory. Plaintiff alleged that defendant owed her the difference between the $1500 per month he had been ordered to pay her and the $1200 per month (and subsequently $900 per month) that he had actually paid her. At the hearing on plaintiff's rule, defendant introduced evidence of an oral agreement allegedly entered into by the parties (prior to rendition of the judgment dated October 11, 1977), which provided that, of the $1500 per month he would pay plaintiff, $300 per month per child would be considered child support.
The trial court, after hearing all of the evidence, found that the oral agreement did exist and that the parties were bound by its terms.

ALIMONY AND CHILD SUPPORT
Plaintiff contends that the trial court's action in upholding the oral agreement constitutes a collateral attack upon, or a modification of, the unambiguous provisions of a final judgment. Plaintiff argues that such action is prohibited by LSA-C.C.P. Article 1951, and the jurisprudence.
LSA-C.C.P. Article 1951 provides:
"Art. 1951. Amendment of judgment
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation."
It is obvious that this article precludes the trial court from amending a final judgment, on its own motion or on motion of any party, in such a manner that the substance of said judgment is altered. LSA-C. C.P. Article 1951 makes no mention of the situation where the opposing parties enter into a prior agreement as to what the substance of the final judgment will be[2]. Further, it is our opinion that the pleading of the existence of such an agreement in defense of an action brought to enforce a *657 final judgment does not constitute a collateral attack upon that judgment.
The evidence shows that the parties actually entered into a "consent judgment" in plaintiff's separation suit, settling and compromising their difference and thereby putting an end to said suit. Defendant testified that the attorneys representing the parties in the separation suit had conducted the actual negotiations that led to the formulation of the oral agreement. Pursuant to this agreement, defendant was to pay plaintiff $900 per month in alimony, and $300 per month per child in child support, for a total payment of $1500 per month. On the advice of counsel, defendant agreed to have the entire amount denoted as alimony in the judgment because of the tax advantage. However, defendant's income tax returns introduced in evidence show that defendant claimed only $10,800 per year as a deduction for alimony in each of these years. Defendant explained that the reason he failed to claim more than $900 per month as alimony was: "Because at the time, I had an opportunity to take it all out as alimony for our tax purposes. I thought it over, but that isn't what I intended originally, and that's what I wrote down, was Nine Hundred Dollars ($900.00) alimony and Three Hundred Dollars ($300.00) child support, and that's what I claimed on my taxes, what [sic] just the alimony."
Bernard E. Beyt represented defendant in plaintiff's separation action. He testified that he had reached an agreement with the attorney representing plaintiff with respect to alimony and child support. He stated that the agreement called for defendant to pay plaintiff $900 per month in alimony and $300 per month per child in child support. Upon the suggestion of plaintiff's attorney, he agreed to have the entire amount denoted as alimony in the judgment so that defendant could deduct this amount when computing his federal income tax. There was no doubt in his mind concerning the fact that an agreement existed between the parties or what the terms of the agreement were.
Plaintiff testified that it was her understanding that the entire amount ($1500 per month) stated in the judgment was for alimony, and that there had been no discussions regarding child support. She testified that she only had one discussion with defendant concerning the fact that he wasn't paying her the full amount set forth in the judgment. At that time, she stated that defendant told her:
"... to be quiet and take it, more or less, or he'd go to Court and cut me off completely because I had a job. So I cried, and I shut up, and I took it."
She denied that any agreement existed which set specific amounts for alimony and child support.
Defendant introduced in evidence a copy of a rule filed by plaintiff on August 28, 1978. Paragraph V of this rule states:
"By judgment of separation rendered on October 11, 1977, defendant was ordered to pay petitioner $1500.00 per month for alimony and child support ..." (Emphasis ours.)
Plaintiff testified that she was unable to recall whether she filed this pleading, although she stated that she must have. Plaintiff was then questioned as to the fact that she had signed the affidavit accompanying the rule, wherein she stated that she had read it and that all of the allegations of fact contained therein were true and correct. Plaintiff replied:
"Well, I would say, I just, you know, I went along and agreed with everything he said as much as possible. And I suppose if that's what he wanted to call it, that's what we called it, you know."
As did the trial court, we consider this to be a judicial admission by plaintiff that the actual agreement between the parties called for the payment of both alimony and child support.
Both defendant and Mr. Beyt testified that a meeting was held in October of 1978 to discuss the issues raised in the above mentioned pleading. In addition to defendant and Mr. Beyt, plaintiff and her attorney and another person were present. At this meeting, defendant stated to her the terms *658 of the agreement as he understood them. Plaintiff gave no response and simply stood mute. Defendant introduced in evidence copies of the checks he had given plaintiff. A number of these checks bear a notation to the effect that $900 was for alimony and $300 was for child support. We note again that Roberta had moved out of plaintiff's home, and into defendant's, shortly after judgment was rendered in the separation proceeding, and that defendant immediately reduced the amount of child support he was paying by $300 per month. Plaintiff admitted that she cashed these checks and that, except for the one time noted above, she never objected to defendant's payment of only $1200 per month to her.
Finally, plaintiff's Federal Income Tax Return for 1980 was introduced in evidence. In it, plaintiff claimed only $10,800 as alimony received. Yet, the evidence shows that she received $11,400 from defendant in that year. Plaintiff was unable to explain this discrepancy, or the fact that she claimed only $10,800 as alimony received in 1978 and 1979, which was the exact amount that defendant contended he owed her as alimony under the terms of the oral agreement.
A consent judgment, which is in effect a bilateral contract between the parties, must be based on consent, an essential element of every contract. LSA-C.C. Article 1819; State, Dept. of Transportation & Development v. K.G. Farms, Inc., 402 So.2d 304 (La.App. 1 Cir.1981), writ denied, 406 So.2d 625 (La.1981); Parkerson v. R-5, Inc., 305 So.2d 592 (La.App. 4 Cir.1974), writ denied, 309 So.2d 679 (La.1975).
Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009 (La.1979), stated at page 1011 and 1012 that:
"Every contract or modification of a previously concluded agreement requires the concurrence of the consent of the parties. La.C.C. arts. 1766, 1779(2), 1798. Consent results from a free and deliberate exercise of the will of each party where the intent has been mutually communicated or implied, La.C.C. art. 1819, and accepted by the party to whom a proposal is made. La.C.C. arts. 1798, 1800.
Consent may be given either expressly or by implication, La.C.C. arts. 1780, 1811, but the cases in which consent is implied are particularly determined by law. La.C.C. art. 1781. According to the civil code, consent may be implied in the following instances:
`... when it is manifested by actions, even by silence or by inaction, in cases in which they can from the circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent.' La.C.C. art. 1811.
`* * *
`[W]hen [actions without words] are done under circumstances that naturally imply a consent to such contract...' La.C.C. art. 1816. See also, La.C.C. art. 1817.
Thus, except in those instances in which the statutory law creates a legal presumption, the mere silence of an offeree should not, in principle, be considered as involving acceptance on his part. His consent can result from silence, however, when combined with other facts or acts so as to imply or indicate his consent unequivocally. 1 Civil Law TranslationsAubry & Rau, Obligations, § 343, p. 307 (1965). See, Governor Claiborne Apartments, Inc. v. Attaldo, 256 La. 218, 235 So.2d 574 (1970). In cases where the law does not expressly create a legal presumption of consent from certain facts, it is left to the discretion of the judge to determine if consent is to be implied from the particular circumstances of the case. La.C.C. art. 1818; Pooler Bldg. Mats. Inc. v. Hogan, 244 So.2d 62 (La.App. 1st Cir. 1971)." (Emphasis ours.)
The Louisiana Civil Code and statutes do not provide that any legal presumption of consent shall arise from a parent's silence and acceptance of alimony pendente lite and child support payments from the other parent. Accordingly, the question to be resolved in this context is essentially factual, i.e., whether the trial judge exercised *659 sound discretion in determining that plaintiff's consent to the oral agreement can be unequivocally implied from her silence and inaction under the particular circumstances of the instant case.
The trial court found that the following facts were proven:
"(1) The Judgment of Separation rendered on October 11, 1977, which ordered Defendant to pay Plaintiff the sum of $1,500.00 per month as alimony was in reality by oral agreement of the parties an award of $900.00 per month as alimony and $300.00 per child per month as child support."
The trial court stated that:
"This was proven by the testimony of Defendant and not seriously denied by Plaintiff; by the silence of Plaintiff throughout the years while accepting lesser sums from her husband; by the testimony of Defendant's attorney at the time; by the fact that Plaintiff did not request child support even though the children were with her; and by her judicial admission that the award was for both alimony and child support in her pleadings signed and filed by her on August 28, 1978."
It is our opinion that the trial court did not abuse the discretion granted it by LSA-C.C. Article 1818.

REDUCTION OF CHILD SUPPORT PAYMENTS
Plaintiff, in her brief filed in this Court, failed to specifically address the issue of whether defendant could reduce his child support payments to her by $300 per month, without a court order, when Roberta quit residing with her and went to live with him. Plaintiff also failed to specifically address the issue of whether defendant could terminate the payment of child support to her, when William reached the age of majority. However, she did address these issues generally.
Dubroc v. Dubroc, 388 So.2d 377 (La. 1980), stated at page 380, that:
"Since the parent's duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended.3 There is no prohibition, however, expressed by the law against a spouse's agreement to suspend his right to compel the other parent without custody to turn over to him in advance money necessary for the child's maintenance. Of course, an essential prerequisite to such a conventional modification of a parent's right to receive support payments is implied. The parent may not, by suspension of this right, thwart the purpose for which the right is established, i.e., the enforcement of the child's right to support and upbringing.
For these reasons, an agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child's maintenance or upbringing or otherwise work to his detriment, the agreement should be enforceable."
In Sims v. Sims, 422 So.2d 618 (La.App. 3 Cir. 1982), we noted that the courts of this State (based on Dubroc) have held that child support was suspended by implied agreement even when the mother did not specifically agree to the suspension of payments, where it was found that the mother delivered the physical custody of the child or children to the father who provided directly for their support. In such cases, an implied agreement has been found due to the mutual understanding between the parents that the father would assume sole responsibility for feeding, clothing, and sheltering the child or children in his care. See Matter of Andras, 410 So.2d 328 (La.App. 4 Cir.1982); LeGlue v. LeGlue, 404 So.2d 1268 *660 (La.App. 4 Cir. 1981); Pierce v. Pierce, 397 So.2d 62 (La.App. 2 Cir.1981).
We find that such an implied agreement existed in the present case with respect to Roberta. While the evidence does not clearly show that plaintiff voluntarily placed her custody with defendant, it does show that plaintiff had no objections thereto. Plaintiff never took any action to regain actual custody of Roberta and stated that:
"She was, you know, grown at the time." Defendant testified that Roberta came to live with him immediately after she left plaintiff, and that she continued to live with him until she was almost 18. After that, she moved to California.
We acknowledge the jurisprudence to the effect that where there is an in globo award of child support for more than one child, the father is not entitled, without seeking court modification of the judgment, to reduce the child support payments on a pro-rata basis, even where the child support is no longer due for one of the children because of majority or other reasons. Gautreaux v. Gautreaux, 382 So.2d 996 (La.App. 1 Cir.1980); Wisdom v. Wisdom, 356 So.2d 1111 (La.App. 2 Cir.1978); Blankenship v. Blankenship, 382 So.2d 982 (La.App. 1 Cir.1980). However, we have already found that, by agreement of the parties, there was no in globo award made to plaintiff for child support, but rather a specific award of $300 per month per child. Thus, these cases are distinguishable on their facts from the action sub judice.
With respect to defendant's termination of child support payments to plaintiff for William once he reached the age of majority, we note that LSA-R.S. 9:309 provides:
"§ 309. Termination of child support obligation upon majority
A. When an order or judgment awards child support in a specific amount per child, said child support award for said child shall terminate automatically and without any action by the obligor to reduce, modify, or terminate the award upon said child's attaining the age of majority.
B. When an order or judgment awards child support in globo for two or more children, said child support award shall terminate automatically and without any action by the obligor to reduce, modify, or terminate the award when the youngest child for whose benefit the award was made attains the age of majority.
Added by Acts 1981, No. 311, § 1."
We find LSA-R.S. 9:309 to be a remedial statute which may be applied retroactively. See Lott v. Haley, 370 So.2d 521 (La. 1979).
The Louisiana Supreme Court in Dubroc noted, at page 379, that its earlier decisions in Halcomb v. Halcomb, 352 So.2d 1013 (La. 1977), and related cases, had interpreted LSA-C.C. Article 232[3] as requiring parties to resort to the courts for any alteration in a custody decree. Dubroc, at page 379, found, "... nothing in the Civil Code or the Code of Civil Procedure to compel the interpretation set forth in Halcomb, et al". Dubroc went on to state, on the same page, that:
"The Civil Code nowhere mandates a lawsuit for a change in alimony, and the Code of Civil Procedure merely provides for the proper procedure in seeking arrearages. This Court in Halcomb and earlier in Pisciotto [v. Crucia, 224 La. 862, 71 So.2d 226] engrafted a jurisprudential rule onto the alimony statutes to the effect that absent a lawsuit to alter an alimony decree the plaintiff in a rule for arrearages would be entitled to the full amount under the prior judgment up to three years prior to the rule.1"
*661 Based on the above quoted language of Dubroc, and the provisions of LSA-R.S. 9:309, it is our opinion that defendant could terminate the payment of child support to plaintiff once William reached the age of majority since the amount of said support was specifically determined.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] Plaintiff also sought to have defendant ordered: to show cause why the trial court should not appoint a notary public to make an inventory of all community property owned by the parties; to show cause why the trial court should not effect a judicial partition of the community property; and, to show cause why a preliminary injunction (in the form of the temporary restraining order prayed for in the petition) should not be granted. None of these matters are before this Court on appeal and there will be no further discussion of them.

In addition, defendant filed a petition for divorce and a rule to terminate alimony and to rescind the TRO. The trial court rendered judgment on the rule, terminating the alimony that defendant had been paying plaintiff. Plaintiff raises no issue on appeal concerning this portion of the trial court's judgment, and it is final.
[2] It has been held that a final judgment may be amended to grant relief to one or more of the parties in a lawsuit, without the necessity of granting a rehearing, where the opposing parties consent to the relief sought. See Mckenzie v. Bacon, 4 So. 65 (La. 1888).

In Davis v. Davis, 405 So.2d 594 (La.App. 3 Cir. 1981), writ denied, 409 So.2d 659 (La. 1982), we upheld the validity of a bilateral agreement, entered into by the parties simultaneously with the rendition of a divorce judgment, which provided that the judgment be "framed" in such a manner as to provide for the maintenance and support of the parties' children in an agreed amount and at the same time afford the defendant a substantial tax advantage (by designating a certain portion of the amount awarded as alimony).
[3] LSA-C.C. Article 232 provides:

"Art. 232. Reduction of alimony or discharge from payment
Art. 232. When the person who gives or receives alimony is replaced in such a situation that the one can no longer give, or that the other is no longer in need of it, in whole or in part, the discharge from or reduction of the alimony may be sued for and granted." (Emphasis ours.)