771 So.2d 827 (2000)
Mary Sue Gregory DUGDALE, Plaintiff-Appellee,
v.
Duane Howard DUGDALE, Defendant-Appellant.
No. 34,014-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
*828 Bobby L. Culpepper, Jonesboro, James A. Hobbs, West Monroe, Counsel for Appellant.
Albert E. Loomis, III, Monroe, Jeffrey L. Dement, West Monroe, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
Duane Howard Dugdale, the father of three minor children, appeals from a child support judgment which calculated arrearages and gave him a reduction in his child support obligations. Mr. Dugdale contends that he was entitled to a greater reduction and that he should have been given credit for certain sums. We affirm the trial court judgment.

FACTS
The parties married in 1983. Of this marriage, three children were born Dusty, Molly and Hunter. The parties were divorced in 1994. By judgment rendered in July 1994, they were awarded joint custody of the children, with the *829 mother being designated as the primary custodian. The mother, Mary Sue Gregory Dugdale, was awarded occupancy of the family home. Child support was awarded in favor of the mother and against the father in the amount of $1,786.30 per month. Of this amount, $786.30 was to be paid by the mother to the mortgage company holding the note on the family home. Also, $400 of the remaining $1,000 was to be used for the children's medical expenses over and above the amount covered by insurance and for child care.[1] If the medical and day care expenses exceeded $400 per month, the father was obligated to pay the excess amount when presented with statements verifying the expenses. If the medical and day care expenses were less than $400, the father was entitled to a credit.
In November 1996, the mother filed a rule for past due child support, court costs, attorney fees and for contempt. Judgment was rendered on this rule in July 1998 against the father for child support arrearages in the amount of $8,389.35, as well as past due medical expenses of $1,176.11. The mother was also awarded attorney fees of $600 and court costs.
In December 1998, the mother filed another rule for past due child support, court costs, attorney fees, and for contempt. In her motion, she alleged that the father was again in arrears on his child support obligation. Specifically, she asserted that he paid only $600 per month from October 1997 to May 1998; no payments from June to July 1998; and only $400 from August 1998 to September 1998. In total, she alleged child support arrearages of $15,835.60.
In February 1999, the father filed a motion to reduce child support, claiming that his income had been greatly reduced. He also sought to reduce his child support obligation due to one of the minor children, Dusty, residing with the paternal grandmother and due to the foreclosure on the family home, for which $786.30 of the monthly child support payment was awarded to the mother. The father also sought to have the paternal grandmother named "primary domiciliary parent" of Dusty.
The mother responded with an exception of no cause of action as to the father's efforts to have custody of Dusty awarded to the paternal grandmother.
The rules were tried in March 1999. In July 1999, the trial court issued written reasons for judgment. As to the mortgage, the court found that the father stopped paying the portion of the child support obligation attributable to it several months before the house was foreclosed upon in October 1996. Since his failure to pay was a primary factor in the foreclosure and the parties had intended for him to provide housing for the children, the court found that the father was not entitled to unilaterally terminate that portion of his obligation after the foreclosure. Furthermore, he was not entitled to benefit from the foreclosure he caused, especially when the family's need for housing continued.
According to the court, the three children lived with the paternal grandmother during the summer of 1998. The court found that the father was not entitled to unilaterally reduce his child support obligation due to this factor, particularly when there was no evidence that, due to the children's presence in the grandmother's home, the father's expenses increased or the mother's fixed expenses decreased.
The court also found that the mother had relinquished the care of the oldest child to the paternal grandmother due to the financial problems caused by the father's failure to pay child support. Thus, the court found that the father was not entitled to unilaterally decrease the child support obligation pro rata, once again finding that he was not entitled to benefit *830 from circumstances caused by his failure to pay. The court denied the request to transfer the boy's custody to a nonparent as there was no evidence of substantial harm as required under La. C.C. art. 133.
However, as to the children's medical expenses, the court allowed the father a credit of $400 per month due to the mother's failure to provide the father with the documentation required under the July 1994 judgment. The court calculated that the entire child support obligation from October 1997 through the filing of the rule to reduce was $30,367.10. Minus payments and/or credits of $14,800.00, the court found that $15,567.10 was owed. The father was assessed with attorney fees of $750, plus court costs.
As to the rule to reduce, the court calculated the mother's monthly income as $3,167.00 (wages of $1,667.00 plus her present husband's payment of expenses of $1,500.00). As to the father's income, the court found that severe heat and drought in 1998 had caused a loss of income from his operation of a chicken farm, his main source of income. Net income from the chicken farm in 1998 was $4,306.51. According to his 1997 tax returns, the father had net income from all sources of $7,124.42, of which only $678.30 was attributable to the chicken farm. Among his deductions for the chicken farm was depreciation of $37,228.15. The court found that this was a "passive" deduction which, for child support purposes, should be added to the net income, for a total of $44,352.57. Given the 1998 drought and heat wave, the court found that the 1997 figures were more representative of the father's true income. The court also noted the shared expense benefit of $250.00 per month the father received from living with his girlfriend. Thus, the court found his total monthly income was $3,946.05.
The court fixed the father's monthly child support obligation at $961.26. The parties were ordered to share equally the medical expenses not covered by insurance, and the reduction was made retroactive to February 25, 1999. Costs pertaining to the father's rule were divided equally between the parties. The contempt rule was deferred pending the father's future performance as to child support payment. Judgment was signed in September 1999.
The father appealed.

MORTGAGE PAYMENT
The father contends that he was entitled to a credit of $786.30 per month once the mortgage on the family home was foreclosed upon and no longer due. He claims that the record does not show that he stopped paying that portion of the child support prior to the foreclosure and thus there was insufficient evidence that he contributed to the foreclosure. He also contends that the judgment on the past due child support was not admitted into evidence. To the contrary, the mother urges that the trial court's ruling on the mortgage matter be affirmed so as to prevent the father from benefitting from his own wrongful actions.
The record shows that the entire suit record was admitted into evidence. Consequently, the trial courtwho also presided over much of the previous litigation was permitted to consider all prior judgments in this domestic litigation. In both past and present proceedings, the court determined that the father's actions contributed to the foreclosure on the house. The testimony of the mother at the instant proceedings corroborated that finding.
A child support judgment generally remains in full force until the party ordered to pay it has the judgment modified, reduced or terminated. Halcomb v. Halcomb, 352 So.2d 1013 (La.1977). The parties may modify or terminate child support payments by conventional agreement if it does not interrupt the children's maintenance or upbringing and is in their best interests. Dubroc v. Dubroc, 388 So.2d 377 (La.1980). The party asserting an extrajudicial modification has the burden of *831 proving a clear and specific agreement; mere acquiescence in accepting reduced payments does not waive the right to enforce the judgment. Dubroc, supra. However, in the instant case, the father does not even allege an agreement.
As correctly noted by the trial court, while the mortgage was no longer owed, the mother and the children's need for housing continued. The father was not entitled to resort to self-help. His unilateral decision to reduce the child support payment was not authorized by law. Thus, the father cannot be allowed to benefit from that action. Furthermore, there is no valid foundation for his argument that "common sense" should allow the portion of the judgment concerning the mortgage to automatically terminate without further judicial proceedings; such a contention is contrary to the proper regard for the integrity of judgments.

PLACEMENT OF ELDEST CHILD
The father contends that he was entitled to a credit against his child support obligation during the time the eldest child was living with the paternal grandmother. He also claims that the trial court should have considered the eldest child's residence with the paternal grandmother when reducing child support. However, the mother contends that the record does not establish that the father has contributed to any of the boy's expenses while living with the grandmother. Furthermore, the mother testified that she had to allow the boy to stay there due to the financial problems caused by the father's failure to pay child support. She also maintains that the living arrangement is not permanent and that she intends to have the boy back with her once the father begins to comply with his financial obligations to his children.
As previously mentioned, Louisiana law generally provides that a child support obligation remains in effect until it is modified, reduced or terminated by the court. An exception to this rule is recognized when a child resides with the obligor parent at the request of the other parent for a substantial period of time and when the obligor parent provides for the full support of the child during that time. See Caraway v. Caraway, 321 So.2d 405 (La.App. 2d Cir.), writ denied, 323 So.2d 479 (La. 1975), and Henson v. Henson, 350 So.2d 979 (La.App. 2d Cir.1977).
Again, the father attempts to benefit from his unilateral misconduct in not paying his full court-ordered child support obligation. The testimony of the mother established that she only allowed her son to live with the paternal grandmother as a result of the severe financial straits caused by the father's nonpayment. Certainly, the father cannot be allowed to elude or reduce his child support obligation under such circumstances. We thus distinguish the instant matter from the Caraway and Henson cases. Accordingly, we find that the father was not entitled to a credit for the time that the eldest child lived with the paternal grandmother. Also, contrary to the father's assertion, the son's temporary living arrangement precipitated by the father's misconduct was not a factor that the trial court should have considered on the father's rule to reduce.

CALCULATION OF FATHER'S INCOME
The father complains of the trial court's calculation of his income for purposes of the child support guidelines. He asserts that the trial court erred in utilizing his 1997 income instead of his more recent income in 1998. He also contends that the trial court erred in including the passive depreciation of his chicken farming income, maintaining that there was no indication that it was any type of accelerated depreciation required to be added back to the net income by La. R.S. 9:315(4)(c).
At the outset, we note that the trial court is granted great discretion regarding the modification of child support decrees. Consequently, the trial court's determination *832 will not be disturbed absent an abuse of discretion. McClelland ex rel. Winters v. Broussard, 98-906 (La.App. 3d Cir.2/3/99), 736 So.2d 878, writ denied, 99-0649 (La.4/23/99), 742 So.2d 891.

Annual income
The father argues that, instead of his 1997 income, the trial court should have utilized his substantially lower 1998 income in setting child support. However, the father's testimony established that his 1998 income was unusually low due to extreme heat and drought that year and its adverse effect on his chicken farm. The trial court exercised its great discretion and found that the 1997 figures were more typical of the father's income. We discern no abuse of the trial court's discretion.

Depreciation
In relevant part, La. R.S. 9:315(4) defines "gross income" as meaning:
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support. [Emphasis added.]
The father contends that the depreciation of $37,228.15 on his 1997 income tax return was not an accelerated depreciation which should be added back in his income for child support purposes. However, he presented no evidence to the trial court to substantiate this claim and justify the exclusion of the deduction from his income. Consequently, we decline to find that the trial court abused its great discretion in adding the depreciation to his income. See Long v. Rebouche, 29,204 (La. App.2d Cir.2/26/97), 690 So.2d 894, and Riggs v. LaJaunie, 98-304 (La.App. 3d Cir.10/7/98), 720 So.2d 114.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the appellant, Duane Howard Dugdale.
AFFIRMED.
NOTES
[1] Two of the Dugdale children suffer from Rieger's Syndrome, a genetic disorder involving dental, ocular and facial abnormalities.