MOORE, J.
 

 I,The trial court awarded the plaintiff $7800 in past due child support. The defendant, who had physical custody of the
 
 *821
 
 child most of this time, appeals. We reverse.
 

 Procedural History
 

 Courtny Heflin and James “Clint” Hef-lin were married on April 18, 1991 and divorced on May 20, 1994. They had one child during the marriage, Heather Joyce Heflin, who was born on May 24,1992, and is now 16 years old.
 

 Pursuant to a consent decree on May 20, 1994, the court awarded the parents joint custody. Courtny was named the domiciliary parent. Clint was named “visiting parent” and ordered to pay $30 per week child support.
 

 On March 4, 2008, Courtny filed a Petition for Rule seeking past due child support in the amount of $7,800, for contempt, attorney fees and court costs.
 
 [1]
 
 She also requested that the court implement a new joint custody plan in which she would have visitation two weekends per month, alternating holidays, and six weeks during the summer. These and other matters were heard on June 3, 2008. The court issued an opinion on July 9, 2008, and judgment was rendered on August 12, 2008 in which,
 
 inter alia,
 
 the court awarded Courtny $7800 in past due child support, which represented five of the past years in which Clint did not pay her child support.
 

 | ¿.The sole matter on appeal is the past due child support award.
 

 Facts
 

 Although the exact date is uncertain, approximately 10 years ago, when Heather was 6 years old, Heather began living with Clint. The circumstances of Clint taking primary custody of Heather and discontinuing child support payments to Courtny was partially disputed at the hearing.
 

 Courtny testified that Clint refused to return Heather to her after a two-week visitation period. She stated that she was having disciplinary problems with Heather during this time, and she asked Clint to take her for a two-week period, but after this period, Clint refused to return Heather. She said that Clint was only supposed to help her with the problems, but not retain physical custody of Heather. She was living in Minden at this time. From this time forward, Clint quit paying her the $30 per week child support, except for a 4th or 5th grade school-year period when Heather attended Apollo Elementary school in Bossier City and lived with her. Courtny said she did not fight Clint for custody because she could not afford an attorney to seek enforcement of the original custody decree, and she was intimidated by Clint. Courtny also testified that during the period in which Clint had custody of Heather, she has had visitation with Heather approximately two weekends per month, spring break, and alternating Thanksgiving and Christmas holidays.
 

 By contrast, Clint testified that Courtny initiated the transfer of custody of Heather to him because of the discipline problems. He testified that they reached an agreement whereby Courtny would pay him $30 per [ ¿¡week in support, and he would keep custody of Heather. He said Courtny never requested Heather’s return and only sporadically made payments to help support Heather; however, she did pay 50% of the cost for Heather to get braces, and she paid $165 per month for the tuition for the school year at Glenbrook. He said
 
 *822
 
 that Courtny never asked him for the support payments because they she had verbally agreed that Heather would live with him and Courtny would not receive support payments. Clint also disputed the period of time that Courtny said Heather lived with her during the time Heather attended Apollo Elementary; Clint testified that it was actually only for a very short period while he was waiting to close on a home he had purchased.
 

 Each party also had witnesses who testified regarding matters generally not relevant to this appeal.
 

 Ruling of the Trial Court
 

 The trial court ruled that there was no express or implied agreement between the parties to suspend the court-ordered child support during the 10-year period Heather resided with Clint, relying primarily on language from the Louisiana Supreme Court decision in
 
 Dubroc v. Dubroc,
 
 388 So.2d 377 (La.1980). Accordingly, the court ordered him to pay five years of child support amounting to $7800.
 

 Clint filed this appeal. The sole error raised by this appeal is whether the trial court erred in finding that Clint owed the past child support.
 

 |4Discussion
 

 A trial court’s finding of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous.
 
 Rachal v. Rachal,
 
 35,074 (La.App. 2 Cir. 10/12/01), 795 So.2d 1286. Under the manifest error standard of review, the only issue to be resolved by the appellate court is whether the trial court’s conclusion was a reasonable one.
 
 Rachal, supra.
 

 A child support judgment generally remains in full force until the party ordered to pay it has the judgment modified, reduced or terminated.
 
 Halcomb v. Halcomb,
 
 352 So.2d 1013 (La.1977). The parties may modify or terminate child support payments by conventional agreement if it does not interrupt the children’s maintenance or upbringing and is in their best interests.
 
 Dubroc v. Dubroc,
 
 388 So.2d 377 (La.1980). The party asserting an extrajudicial modification has the burden of proving a clear and specific agreement; mere acquiescence in accepting reduced payments does not waive the right to enforce the judgment.
 
 Dubroc, supra; Rachal, supra.
 

 The trial court in this case found that there was no agreement, implied or otherwise, between Clint and Courtny to suspend Clint’s child support payments to Courtny. Accordingly, it concluded that it was compelled to follow
 
 Dubroc v. Dubroc, supra,
 
 and it awarded Courtny five years of child support in the amount of $7800.
 

 After our review of the record in this case and the applicable jurisprudence, we conclude that the trial court erred in this case.
 

 In
 
 Dubroc v. Dubroc, supra,
 
 the issue presented was whether a court |Bmay enforce an agreement between divorced parents to suspend the mother’s right to receive child support payments under a judgment while the father supports and maintains the child in his own home. Laura Moga and Norris Dubroc were divorced on January 10, 1975, and Laura obtained custody of them two children, Aubry and Deborah. The court ordered Mr. Dubroc to pay $250 per month in child support, but one month later, Laura decided that she no longer wanted custody of her son, Aubry, and she proposed to Mr. Dubroc that he care for the child. In exchange for assuming custody of Aubrey, he told Laura that he would pay only $125 per month, a
 
 pro rata
 
 reduction of the child support award. The court noted that although
 
 *823
 
 Laura’s testimony was equivocal about her assent to the reduction, the evidence indicated clearly that she agreed to the reduction of the alimony in exchange for relief from her obligation to take care of Aubry. For the next four years the parties fulfilled the conditions of their custody/support agreement. Mr. Dubroc continued to take care of the son while paying Laura $125 per month in support of their daughter. Neither party complained of the arrangement until Ms. Moga instituted a rule to make past due support executory.
 

 The trial court refused to enforce the agreement and awarded the mother a judgment for past due support payments. The court of appeal reversed, concluding that the agreement to suspend support payments was enforceable.
 

 The Supreme Court affirmed the court of appeal judgment, holding that an agreement between divorced parents to suspend the mother’s right to | ^receive child support payments while the father supports and maintains the child in his own home is enforceable if it promotes the best interest of the child. The court stated:
 

 [A]n agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child’s interests, would be inimical to the ultimate goal of support and upbringing of the child. On the other hand, if the parties clearly agree to a suspension of the payments, and such agreement does not interrupt the child’s maintenance or upbringing or other wise work to his detriment, the agreement should be enforceable.
 
 Dubroc, supra
 
 at 380.
 

 The
 
 Dubroc
 
 court was careful to distinguish the circumstances in
 
 Dubroc
 
 from those in its prior ruling in
 
 Halcomb v. Halcomb,
 
 352 So.2d 1013 (La.1977), where the husband owing child support unilaterally decided to make a
 
 pro rata
 
 reductions from the
 
 in globo
 
 child support judgment amount as each of his children reached the age of majority, and the wife apparently acquiesced in the reduction for six years before bringing an action for past due support. Even though the husband would have likely been entitled to the reduction had he filed a rule for modification of the award in court, he could not make the
 
 pro rata
 
 reduction of the
 
 in globo
 
 award on his own, nor did the wife waive the right to seek the past due amounts.
 

 The
 
 Dubroc
 
 court recognized that its
 
 Halcomb
 
 opinion could be read as holding that a judgment to pay child support cannot be modified except by a suit in court. Since the parent’s duty of support and upbringing is a legal duty owed to the child, it cannot be renounced or suspended. 17However, in
 
 Dubroc,
 
 the court concluded that there is no prohibition expressed by the law against a spouse’s agreement to suspend his right to compel the other parent without custody to turn over to him in advance money necessary for the child’s maintenance so long as it fosters the continued support and upbringing of the child.
 
 Dubroc, supra.
 
 See also, La. C.C. art. 142, Comment (c).
 

 Thus, as stated above, Louisiana law generally provides that a child support obligation remains in effect until it is modified, reduced or terminated by the court. This general rule is now embodied in Civil Code Article 142 and is based on a strong policy in the area of child custody judgments to safeguard the sanctity of judgments and the orderly processes of law, and to prevent husbands from invoking “self-help.”
 
 Dubroc, supra.
 

 
 *824
 
 Aside from the exception to the general rule discussed in the
 
 Dubroc
 
 case, another line of jurisprudence has recognized an exception to the general rule in cases when a child resides with the obligor parent at the request of the other parent for a substantial period of time and when the obli-gor parent provides for the full support of the child during that time.
 

 In
 
 Silas v. Silas,
 
 300 So.2d 522 (La.App. 2d Cir.1974),
 
 units refused,
 
 the wife was given custody of the children and child support of $400 per month pursuant to a judgment of separation. Later, the wife voluntarily placed the children in the husband’s custody for a period of eight months. In the wife’s rule to regain custody of the children and to make past due child support payments executory, this court affirmed the trial court’s decision to allow a credit for that period of time during which the children were in the | ^husband’s custody.
 

 In
 
 Caraway v. Caraway,
 
 321 So.2d 405 (La.App. 2 Cir.1975),
 
 unit denied,
 
 323 So.2d 479 (La.1975), the wife was given custody of the child and awarded $40 per week child support pursuant to a divorce decree. Three weeks after its rendition, she voluntarily placed the child in the husband’s custody where the child remained until trial of the wife’s rule to regain custody and make past due child support execu-tory. Finding that the facts were indistinguishable from
 
 Silas, supra,
 
 this court held that where the wife voluntarily places the only child of the marriage in the custody of the husband for an extended period of time, the husband is entitled to credit for such period of time on any past due child support.
 
 See also, Henson v. Henson,
 
 350 So.2d 979 (La.App. 2d Cir.1977). (Trial judge was correct in awarding the husband credit for child support payments from the time children were given to him until judicial demand by the wife.)
 

 These cases were decided prior to
 
 Du-broc, supra,
 
 and were based primarily on grounds that the spouse to whom child support payments were owed had
 
 waived
 
 the right to make past due child support payments executory for periods in which that spouse voluntarily placed the child or children of the marriage in the custody of the husband for an extended period of time. Although this exception was acknowledged by this court in
 
 Dugdale v. Dugdale,
 
 34,014 (La.App. 2 Cir. 11/1/00), 771 So.2d 827, that is, after
 
 Dubroc, supra,
 
 was rendered, most cases with facts similar to the “waiver” cases have been couched in terms of an “implied agreement,” inasmuch as
 
 Dubroc
 
 required that any agreement by a parent to suspend his | siright to receive child support payments must meet the requisites for a conventional obligation as well as foster the best interest of the child.
 

 In
 
 Chamblee v. Harvey,
 
 2001-070 (La. App. 3 Cir. 6/6/01),787 So.2d 610, the defendant, Dennis W. Harvey, appealed a judgment condemning him to pay $13,977.00 in past due child support. Vicki Chamblee (formerly Harvey), was originally awarded child support for her two children, Danielle and Daniel, and the State of Louisiana through the Department of Social Services began collecting child support of $400.00 per month from Dennis Harvey pursuant to that order.
 

 Six years later, in April of 1998, Mrs. Chamblee informed the State of Louisiana that both of her children were living with their father and had been doing so since approximately December of 1997. Because the children were not living with the custodial parent, the State did not continue collection of the court-ordered support. However, since there were outstanding arrears at the time, the State did not close their case and applied any sums paid toward the amount in arrears.
 

 
 *825
 
 On January 13, 2000, pursuant to Mrs. Chamblee’s request, the State of Louisiana initiated an action to collect the past due child support. Mr. Harvey denied the claim and alleged that there was a “verbal agreement that any arrears owed her [Mrs. Chamblee] would be applied to the remainder of the time the children were living with me [Mr. Harvey].” Mrs. Chamblee denied any such agreement.
 

 The only issue before the trial court was how much, if any amount, did Mr. Harvey owe in back child support. The testimony at trial differed as |into how long the children lived with their father, and included testimony from Daniel and Danielle Harvey, Cynthia Harvey, Dennis Harvey’s current wife, and Vicki Chamblee’s mother. It appeared that one child, Danielle, went to live with Mr. Harvey in December of 1997, and the other child, Daniel went to live with him in January of 1998.
 

 After trial, the court concluded that Mr. Harvey was unable to “clearly prove” the existence of the oral modification in the manner in which one would prove the existence of any oral conventional obligation. Mr. Harvey was the only witness who had any knowledge of the agreement, and he was the party with the most to gain from such an agreement. His former spouse denied the existence of such an agreement, and no other witness during the proceedings, including those called by Mr. Harvey, had any knowledge of such an agreement.
 

 On appeal, the court agreed with the trial judge that Mr. Harvey failed to prove the existence of an oral agreement to terminate or reduce his child support obligation once the children left their mother’s household. Nevertheless, the inquiry did not end there.
 

 Observing that “courts of this state have long held that child support payments may be suspended by implied agreement,” the court went on to say:
 

 Louisiana courts have further held that child support was suspended by implied agreement even when the mother did not specifically agree to the suspension of payments, where it was found that the mother delivered the physical custody of the child or children to the father who provided directly for their support. In such cases an implied agreement has been found due to the mutual understanding between the parents that the father would [nassume sole responsibility for feeding, clothing and sheltering the child or children in his care.
 
 See Matter of Andras,
 
 410 So.2d 328 (La. App. 4 Cir.1982);
 
 LeGlue v. LeGlue,
 
 404 So.2d 1268 (La.App. 4 Cir.1981);
 
 Pierce v. Pierce,
 
 397 So.2d 62 (La.App. 2 Cir. 1981);
 
 Sims v. Sims,
 
 422 So.2d 618, 622 (La.App. 3 Cir.1982),
 
 writ denied,
 
 427 So.2d 870 (La.1983).
 
 See also Bagby v. Dillon,
 
 434 So.2d 654 (La.App. 3 Cir.),
 
 writ denied,
 
 440 So.2d 150 (La.1983);
 
 Hendricks v. Hendricks,
 
 594 So.2d 1129 (La.App. 3 Cir.1992);
 
 Goss v. Goss,
 
 95-1406 (La.App. 3 Cir. 5/8/96), 673 So.2d 1366; and
 
 Brasfield v. Brasfield,
 
 98-1021 (La.App. 5 Cir. 2/23/99), 729 So.2d 83.
 

 The court noted that Mrs. Chamblee admitted that the children had lived with their father since around December of 1997 and had never returned before reaching the age of majority. It concluded that it could not “condone her reaping the benefit of child support payments past that time.” Accordingly, the court concluded that Mr. Harvey’s child support obligation was suspended, by implied agreement, from December 31, 1997, until Daniel reached majority. The court modified the judgment of the trial court eliminating the amount of child support due after the children began residing with Mr. Harvey.
 

 In this ease, it is undisputed that Clint and Courtny initially entered into an ar-
 
 *826
 
 i’angement whereby he would take custody of Heather. This is admitted by the plaintiff. The disputed issue of fact is how long this arrangement was to continue, including discontinuance of Clint’s child support payments.
 

 The testimony does not show that plaintiff made any demands upon defendant to make support payments to her while Clint had custody of Heather, nor did she take any legal action to enforce the support payments [^after she gave custody of Heather to Clint. This lack of complaint on her part lends credence to the version of the agreement contended by defendant and a tacit acquiescence in the discontinuation of support payments.
 
 See Hodge v. Hodge,
 
 338 So.2d 161 (La.App. 2d Cir. 1976).
 

 Courtny voluntarily relinquished physical custody of Heather to Clint for at least a two-week period due to problems she was having with disciplining Heather. She testified that after the two-week period, however, Clint refused to return Heather to her and she did not have the money to obtain legal assistance. Clint testified that Courtny asked him to keep Heather and never requested that he return Heather to her, nor did she ask for child support payments, inasmuch as he says she agreed to pay him the same child support he was obligated to pay her. We observe two important facts in this regard. First, Courtny did not take legal action for past due child support for 10 years. Second, Courtny testified that during the period that Clint had custody of Heather, she had periodic visitation with Heather. In fact, in requesting that the court implement a custody plan that provided for visitation for her twice a month, every other spring break and alternating holidays, she stated that this was what they “had pretty much always done.” It seems somewhat incredible that during the times when Heather was with her for visits she did not seek protection from the authorities to keep custody of Heather pursuant to the original decree.
 

 While we are very reluctant to overturn the factual findings of the trial court, especially in matters involving an agreement to suspend the child support obligation, we conclude that this case is one of those rare cases in |iawhich the “implied agreement” exception should apply. We also observe that the evidence shows that during the 10-year period that Heather lived with Clint, he apparently provided all of her food, clothing, and shelter needs. Heather has apparently thrived in her education and extra-curricular sports activities.
 

 This is not to say that Courtny did
 
 not
 
 also provide financial and emotional support in rearing Heather. Our review of the record reflects that both parents have essentially discharged their parental duties admirably.
 

 Conclusion
 

 We conclude that the trial court was clearly wrong in finding that there was no implied agreement to suspend child support payments after Courtny voluntarily delivered physical custody of Heather to Clint and for 10 years thereafter made no attempt to take custody of Heather pursuant to the original custody decree.
 

 Accordingly, the judgment of the trial court condemning Clint to pay $7800 in past due child support is reversed.
 

 REVERSED.
 

 [1]
 

 . The record shows that Clint filed a “rule for change of custody” on June 2, 1998. At this time, Heather was 6 years old. In his petition, he alleged that Courtny had moved 9 times in the preceding year, and she and the child were living with Courtny's boyfriend. The petition alleged that Heather had expressed a desire to live with her father. Although the matter was set for hearing, it was passed and never reset.