GASKINS, J.
_JjThe plaintiff, Janie Catherine Raley Bergeron, appealed from a trial court judgment which set permanent child support, modified the prior joint custody implementation plan, and reversed the plaintiffs decision to place the parties’ two children in a different school. The defendant, James Ronald Bergeron, Jr., answered the appeal, claiming that the trial court improperly ruled that his final child support obligation would be increased retroactively to May 21, 2007, the date of filing of the rule for an increase, rather than the date of the July 2008 trial court judgment. For the following reasons, we affirm in part, and amend in part, the trial court judgment.
FACTS
The plaintiff and defendant were married in 1992. They have two daughters, Ashley born in 1998, and Audrey born in 2000. In July 2004, the plaintiff filed for divorce. In September 2004, an interim judgment was rendered in open court awarding joint custody and ordering the defendant to pay $1,380.00 per month in child support.
In November 2004, a joint custody implementation plan was approved by the trial court and filed into the record. The plan specified that the plaintiff is the domiciliary parent. The plan included a complicated system of shared custody whereby the defendant had the children from Friday afternoon to Tuesday morning; the plaintiff had them from Tuesday afternoon until the following Monday morning. The defendant then picked the children up from school on Monday afternoon and kept them until Wednesday. The plaintiff had them from Wednesday afternoon until Friday morning. The plan would then repeat. Under this plan, the plaintiff had the | .¿children 57 percent of the time and the defendant had them 43 percent of the time.
A judgment of divorce was entered on February 16, 2005. The plaintiff reverted to the use of her maiden name.
On May 21, 2007, Ms. Raley filed a rule to modify the child custody order and to set final child support. She contended that material changes in circumstances required a modification of the custody order. She argued that the prior custody arrangement was disruptive for the children. She also made numerous allegations claiming that Mr. Bergeron did not properly care for the children. Ms. Raley sought to have the children live with her during the school year, with visitation for the father every other weekend. According to Ms. Raley, Mr. Bergeron had taken a job in the construction industry which required him to be in Las Vegas, Nevada, much of the time.
The children attended St. Joseph School. Ms. Raley had taken measures to switch the girls to First Baptist Church School, contending it had better programs and resources. On April 22, 2008, Mr. Berger-on filed a rule to show cause why an order should not be entered prohibiting Ms. Ra-ley from enrolling the children in First Baptist Church School.
The rules were heard by the trial court in May and June 2008. On July 29, 2008, *951 the trial court signed and filed a judgment specifying that the parties are to continue with joint custody, subject to the amended joint custody implementation plan executed with the judgment. In the amended joint custody implementation plan, the court ordered that the mother |scontinue as domiciliary parent, but the children were to stay with the mother one week and the father the next week.
Mr. Bergeron was ordered to pay final child support in the amount of $1,126.08, retroactive to May 21, 2007, and subject to credit for sums paid. The trial court overruled the decision of Ms. Raley to send the children to First Baptist Church School and ordered that they be readmitted to St. Joseph School.
In the reasons for judgment, the trial court discussed the history of child support prior to the instant rale to set final support. The court noted that the prior order specified that Ms. Raley had the children 57 percent of the time and Mr. Bergeron had them 43 percent of the time. In the prior order, interim child support had been set at $1,380.00 and the parties had agreed that they were not precluded from having the court determine the correct amount of permanent child support at a later date. The issue of final support had been discussed between the parties and the court noted that letters between the parties’ counsel showed that the trial court was considering setting the final child support award at $750.00 per month. Since late in 2004, Mr. Bergeron had paid and Ms. Ra-ley had accepted $750.00 per month in interim child support. The court found that the parties agreed that $750.00 per month was the amount of monthly child support due until further proceedings.
The evidence showed that Mr. Bergeron had a better job and now earns a higher income. The court found that Worksheet B under La. R.S. 9:315.9 and 9:315.20 was applicable. The trial court set the final child ^support obligation due from Mr. Bergeron at $1,126.08, retroactive to May 21, 2007, the date of the filing of the instant rule.
The court considered the mental health evaluations that were conducted on the parties and concluded that both were good parents and that both agreed that the former custody implementation plan was not in the best interest of the children. The court found that it would be better for the children for the parties to have shared custody, with the children spending alternating weeks with each parent.
The court determined that the children should remain at St. Joseph School. It noted that Ms. Raley had not consulted with Mr. Bergeron in her plan to switch the children to a new school and that there was no showing that a hew school would provide more for the children at this time.
Ms. Raley appealed the trial court judgment and Mr. Bergeron answered the appeal.
COMPROMISE OF CHILD SUPPORT OBLIGATION
Ms. Raley argues that the trial court erred in concluding that the parties somehow compromised the interim child support obligation of Mr. Bergeron. Ms. Ra-ley contends that the trial court was wrongly persuaded to believe that the parties agreed that the interim child support amount would be $750.00 per month. She points to numerous letters between the parties’ counsel showing that they were not in agreement as to the child support amount. This argument is without merit.
Legal Principles
A trial court’s finding of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or *952 manifestly erroneous. Under the manifest error standard of review, the only issue to be resolved by the appellate court is whether the trial court’s conclusion was a reasonable one. Heflin v. Heflin, 44,155 (La.App. 2d Cir. 1/14/09), 1 So.3d 820.
In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. Mizell v. Mizell, 37,004 (La.App. 2d Cir.3/7/03), 839 So.2d 1222.
The general rule in Louisiana is that an alimony or child support judgment remains in effect until the party liable has it modified or terminated by the court. See Halcomb v. Halcomb, 352 So.2d 1013 (La.1977); Mizell v. Mizell, supra. The policy reason behind this rule is obvious. The law does not want to encourage those owing alimony or child support to become involved in “self-help” by making their own determinations as to when they have satisfied their alimony or child support obligations by some method other than payment in accordance with the court order. Mizell v. Mizell, supra. There is an exception to this general rule when the evidence shows that the parties have clearly agreed to waive or otherwise modify the court-ordered payments. Mere acquiescence in the IfiObligor’s failure to pay the full amount of support is not a waiver. Mizell v. Mizell, supra; McDaniel v. McDaniel, 2003-1763 (La.App. 3d Cir.5/19/04), 878 So.2d 686. However, courts of this state have long held that child support payments may be suspended by implied agreement. See Heflin v. Heflin, supra. The burden of proof of the existence of the agreement is on the party seeking to modify his obligation under the judgment. Mizell v. Mizell, supra. See also Dubroc v. Dubroc, 388 So.2d 377 (La.1980). See and compare Davis v. Davis, 43,490 (La.App. 2d Cir.10/22/08), 997 So.2d 149; Scott v. Scott, 43,455 (La.App. 2d Cir.8/13/08), 989 So.2d 290; Heflin v. Heflin, supra.
Discussion
In September 2004, the trial court ordered the amount of interim child support due from Mr. Bergeron to be $1,380.00 per month. According to Ms. Raley, from September 20, 2004, until November 2004, Mr. Bergeron paid child support in the amount of $1,380.00 per month. Beginning in December 2004, he paid $750.00 per month in interim child support. In its reasons for judgment, the trial court noted that, after the order of the interim child support amount, there was a status conference, with the trial court judge presiding over the case at the time, wherein he indicated that the final child support figure would be $750.00 per month. In a letter dated January 21, 2005, addressed to Mr. Bergeron’s counsel, Ms. Raley’s attorney stated that he had explained to Ms. Raley that the trial court was not inclined to award as final child support the full amount arrived at under worksheet calculations because Mr. Bergeron had the children 43 percent of |7the time. The amount of $750.00 was intended to reimburse Ms. Raley for the time the children were with her. Ms. Raley’s counsel stated that his client was resigned to that amount.
Letters from March 4-17, 2005 indicate that Mr. Bergeron proposed a lesser amount for final child support. A letter dated March 24, 2005, from Mr. Berger-on’s attorney to Ms. Raley's counsel stated that Mr. Bergeron had agreed to the amount of $750.00. The record shows that while the interim child support order was in effect, Mr. Bergeron actually paid, and *953 Ms. Raley accepted, $750.00 per month. Subsequent letters filed into the record show that the parties continued to negotiate on the amount of final child support. However, there is no dispute that Ms. Raley accepted the amount of $750.00 per month.
In Mr. Bergeron’s answer to Ms. Raley’s rule to show cause, he alleges that, following the setting of interim child support at $1,380.00 per month, a post-trial status conference was held with the court and counsel of record on November 24, 2004. According to Mr. Bergeron, the court indicated that the final child support figure would not be based on a worksheet calculation, but would fall between $600.00 and $900.00 per month. Mr. Bergeron contends that Ms. Raley proposed the figure of $750.00 per month. He stated that he accepted that figure and has been paying that amount since 2004. However, the record is clear that a final child support judgment for the amount of $750.00 was never signed by the trial court. One goal of the present rule filed by Ms. Raley was to set final child support.
RBased upon this record, we affirm the trial court’s determination that the parties agreed that $750.00 was the amount of child support to be paid until further proceedings. Both parties clearly understood that a final child support judgment had not been rendered. In fact, Ms. Raley’s petition requests the setting of final support. Consequently, we find the $750.00 child support was an interim award agreed to by the parties.
CHILD SUPPORT CALCULATION AND RETROACTIVITY OF AWARD
The trial court ordered that the final child support amount to be paid by Mr. Bergeron is $1,126.08 per month, retroactive to May 21, 2007, the date of the filing of the present rule by Ms. Raley.
Mr. Bergeron answered the appeal arguing that the increased child support award should apply prospectively only.
Legal Principles
Regarding interim allowances and final child support awards, La. C.C. art. 141 states:
In a proceeding for divorce or thereafter, the court may order either or both of the parents to provide an interim allowance or final support for a child based on the needs of the child and the ability of the parents to provide support. The court may award an interim allowance only when a demand for final support is pending.
The retroactivity or prospective application of child support awards is governed by La. R.S. 9:315.21, which provides in pertinent part:
A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
|3B. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
(2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.
C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand, but *954 in no case prior to the date of judicial demand.
[[Image here]]
E. In the event that the court finds good cause for not making the award retroactive to the date of judicial demand, the court may fix the date on which the award shall commence, but in no case shall this date be a date prior to the date of judicial demand.
Section A of La. R.S. 9:315.21 mandates that, except where good cause is demonstrated, a judgment awarding, modifying or revoking an interim child support allowance must be retroactive to the date of demand for the same. Correspondingly, Subsection B(l) of La. R.S. 9:315.21 provides that, thereafter, a judgment that awards or denies final child support takes effect the date the judgment is signed and terminates an interim child support allowance as of that date. Moran v. Moran, 2002-1562 (La.App. 1st Cir.6/27/03), 858 So.2d 581, writ denied, 2003-2124 (La.11/7/03), 857 So.2d 502.
Under these provisions, where the trial court makes a final child support award and where an interim child support award is in effect on the date of the judgment, the judgment should not be made retroactive. See 10Martin v. Martin, 1998-165 (La.App. 3d Cir.6/3/98), 716 So.2d 46; Moran v. Moran, supra.
Discussion
There was an interim child support award in place in this matter. Therefore, under La. R.S. 9:315.21, the final child support award in the present case, $1,126.08 per month, applies prospectively from the date of the signing of the judgment, July 29, 2008. The parties have not disputed the gross amount of income applicable at the time of the trial court’s calculation of the final child support award. We affirm that portion of the trial court judgment setting final child support at $1,126.08 per month. However, we amend the trial court judgment to provide that the award applies from the date of the signing of the judgment, July 29, 2008.
CHILD CUSTODY IMPLEMENTATION PLAN
Ms. Raley filed suit to change the existing joint custody implementation plan which both parties acknowledge was confusing and not in the best interest of the children. She sought to have the court order a more conventional child custody arrangement whereby she would have the children during the school year, with visitation for Mr. Bergeron every other weekend. Ms. Raley provided an extensive list of reasons she felt warranted limiting Mr. Bergeron’s time with the children. The trial court in this case ordered that the parties share physical custody of the children with the girls living in each parent’s household on alternating weeks. Ms. Ra-ley argues that the trial court erred in implementing a shared custody arrangement | uparticulaxly where Mr. Bergeron had not sought such an arrangement.[1] This argument is without merit.
Legal Principles
La. C.C. art. 131 provides that in a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child. La. C.C. art. 132 states that if the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best inter *955 est of the child requires a different award. In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.
In determining the best interests of the child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular case. Hoskins v. Hoskins, 36,031 (La.App. 2d Cir.4/5/02), 814 So.2d 773.
The factors to be considered by a court in awarding custody of children are set forth in La. C.C. art. 134:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
|1⅞(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The court is not bound to make a mechanical evaluation of all the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence | ^presented. Hoskins v. Hoskins, supra. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the much discretion of the trial court. Hoskins v. Hoskins, supra.
To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally. La. R.S. 9:335(A)(2)(b). The trial court’s decision in child custody matters is entitled to great weight and it will not be overturned absent a showing of manifest abuse of discretion. Washkow v. Washkow, 33,965 (La.App. 2d Cir.8/23/00), 765 So.2d 1210.
*956 Discussion
In imposing an amended joint custody implementation plan, the trial court considered the testimony of the parties, people who knew them, and the opinions of mental health professionals. Ms. Raley testified that the original visitation plan has been chaotic. She sought to have the girls live with her during the school year, with visitation for Mr. Bergeron. She claims that Mr. Bergeron is not good with the girls and sends the girls’ clothes home dirty. She claims that Mr. Bergeron thinks that daily bathing is bad for the children’s skin and that they smell when they come home after staying with him. Ms. Raley described an incident in January 2005 when temperatures were below freezing and Mr. Bergeron did not dress the children warmly enough. She claims that Mr. Bergeron does not help with homework and she has to help them catch up when they return to her household. Ms. Raley stated that the children exhibited behavior problems |14after returning from Mr. Bergeron’s house and she sought advice and counseling for the children from Dr. Susan Vigen, a child psychologist.
John Raley, Ms. Raley’s brother, testified that his sister is a good mother. He stated that there have been problems with Audrey throwing up when it was time to go to Mr. Bergeron’s home.
Michael Labban, Ms. Raley’s boyfriend, testified that he has observed the girls to be dirty and smelly when they returned from staying with Mr. Bergeron. Mr. Labban, who has no children living at home, stated that he remodeled his house so that each of Ms. Raley’s children would have a separate bedroom. Ms. Raley and the girls frequently stay with Mr. Labban at his house.
Mr. Bergeron testified that he is a self-employed consultant in the construction industry. The parties had lived in Dallas, Texas, and moved to Shreveport in June 2008. Mr. Bergeron’s parents live in Shreveport. Mr. Bergeron stated that the parties physically sepai’ated on July 21, 2004.
Mr. Bergeron said that the majority of the time, he can schedule his work travel to accommodate having his children. He testified that he has been a member of the parent-teacher organization at St. Joseph School since 2005. He has helped with a pancake breakfast, family fun night, field days, and teacher appreciation day. He also attends pep rallies. He said that he schedules play dates for the children and frequently takes them to activities in the community such as shows and skating. Monday nights are spent dining with Mr. Bergeron’s parents. When the girls stay with him, he takes them to church. Mr. Bergeron stated that when the girls are with him, they 11shave a snack after school and then do homework. Mr. Bergeron objected to the children staying overnight with Ms. Raley and Mr. Labban at Mr. Labban’s residence.
Upon the motion of Ms. Raley, the trial court appointed Dr. Richard Williams, a psychiatrist, to examine the mental health of both parties. Dr. Williams testified at trial and was accepted as an expert in psychiatry. In addition to his testimony, a written report by Dr. Williams was filed into the record. He stated that he talked to both parties in this matter and reviewed the reports of Dr. Vigen. He also interviewed people who knew both parties and reviewed e-mails and correspondence between the parties concerning the children. Both parties stated that they informed Dr. Williams of their concerns and complaints about the other parent.
Dr. Williams noted that Mr. Bergeron takes medication for depression and for attention deficit disorder. He also consid *957 ered that the parties had attended joint counseling sessions during the marriage. Mr. Bergeron had undergone counseling with a psychologist after the breakup of the marriage. Mr. Bergeron’s psychological testing was normal. Dr. Williams termed him an extrovert with no depression and no evidence of a character defect. Dr. Williams noted that Mr. Bergeron has had an active and important role in caring for his daughters; he participates in school, health care, and outside activities.
Dr. Williams found that Ms. Raley’s psychological testing showed that it was completed in a defensive manner and that she portrayed herself as scrupulous and highly moral.
| Recording to Dr. Williams, both parties are good parents and can provide safety to the children. He found no significant psychopathology for either parent. He noted that under the prior custody arrangement, Mr. Bergeron asked to change his time for custody more than Ms. Raley due to traveling for his job.
According to Dr. Williams, neither Mr. Bergeron nor Ms. Raley believes that the children are in danger of neglect from being with the other parent. Dr. Williams observed that the children are functioning well in the school and home environment, but the original joint custody implementation plan did not provide a great deal of consistency from week to week and did not allow the girls to have an entire week in one home. Dr. Williams opined that this would be improved by the girls spending one week with Mr. Bergeron and one week with Ms. Raley, beginning Friday afternoon after school until the following Friday morning when dropped off for school.
A report filed into the record by Dr. Vigen concluded that, “Having the girls live primarily in one home during each week of the school year would allow one parent to take on the primary responsibility of supervising and monitoring the children’s academic progress; this might provide for more accuracy and consistency.”
Although each parent has complaints about the other, Dr. Williams found both parties to be good parents. He found that the children would benefit from living in each parent’s home on alternating weeks. The trial court was not manifestly erroneous in finding that the best interest of the 117children would be served by implementing such a shared custody plan. Accordingly, we affirm the trial court judgment in this regard.
DESIGNATION OF SCHOOL
Ms. Raley maintains that, as domiciliary parent, under La. R.S. 9:335(B)(3), she had the right to choose where the children would attend school. Although the children had always gone to St. Joseph School, she determined that its academic program was inferior to First Baptist Church School which offered accelerated programs for gifted and talented children. She also claims that she presented sufficient evidence to show that First Baptist Church School would be a superior environment for the children. Ms. Raley claims that Mr. Bergeron failed to carry his burden of proving that enrollment in First Baptist Church School would not be in the best interest of the children. This argument is without merit.
Legal Principles
When parties are awarded joint custody, the court shall designate a domiciliary parent unless the implementation order provides otherwise or for other good cause shown. La. R.S. 9:335(B)(1). The domiciliary parent is the parent with whom the child primarily resides. La. R.S. 9:335(B)(2). Shaw v. Shaw, 30,613 (La.App. 2d Cir.6/24/98), 714 So.2d 906, writs denied, 1998-2414 (La.11/20/98), 729 So.2d *958 556, 1998-2426 (La.11/20/98), 729 So.2d 558.
The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent, which would include the |1schoice of schools, are subject to judicial review upon motion by the non-domiciliary parent. In the judicial review, it is presumed that all major decisions made by the domiciliary parent are in the best interest of the child and the burden of proving they are in fact not in the best interest of the child is placed on the non-domiciliary parent who opposes the decision. La. R.S. 9:335(B)(3); Shaw v. Shaw, supra; Walden v. Walden, 2000-2911 (La.App. 1st Cir.8/14/02), 835 So.2d 513; Schmidt v. Schmidt, 02-885 (La.App. 5th Cir.1/14/03), 839 So.2d 150.
Discussion
In this case, Ms. Raley was designated as the domiciliary parent. She had the right to make a decision regarding the children’s school, subject to judicial review upon the motion made by Mr. Bergeron.
Ms. Raley testified that Ashley needs more of a challenge in school and Audrey needs more help with reading. Ms. Raley considered numerous private schools and had the children tested for the Caddo Parish magnet school program. The children passed the tests for magnet school, but the Caddo Parish School system did not have two slots for the girls at the same school. After investigating numerous other possibilities, Ms. Raley concluded that First Baptist Church School would be the best environment for the children. She cited the low student/teacher ratio, the presence of smart boards and computers in all classrooms, and the ability to earn high school credit for French, algebra, and computer science. Ms. Raley contended that there was no comparable program at St. Joseph School. She also pointed out that First Baptist Church School participates in the Duke | ^University talent search and offers more physical education and enrichment classes.
Mr. Bergeron and his parents currently pay the tuition for the children to attend St. Joseph School, which is not calculated into the support award. The parties pay their proportionate share of related expenses such as lunch fees. Ms. Raley stated that if Mr. Bergeron was not willing to pay for tuition at First Baptist Church School, she would pay for this expense. When asked how she intended to do so, Ms. Raley, who is starting a new business and has a very low income presently, stated that her brother would help pay the tuition. Mr. Raley, who testified at trial on behalf of his sister, was asked about his ability to pay for private school tuition for Ms. Raley’s children. Mr. Raley stated that he gives his sister several hundred dollars each month, depending on what she needs. When asked about the cost of tuition at First Baptist Church School, Mr. Raley stated that he would give what he could for private school tuition, but was not prepared to triple his monthly contribution to his sister.
Mr. Bergeron testified that Ms. Raley did not discuss with him the plans to change the girls to another school. He stated that he is Catholic and Ms. Raley formerly was of the same faith. He deemed it important to have the children educated in a Catholic school. The girls’ report cards were introduced which showed that both children were doing well in school. One of the girls participated in an enrichment group. St. Joseph School offers the opportunity to earn high school credit in Spanish and algebra.
*959 IgpMr. Bergeron called Susan Belanger, principal of St. Joseph School, to testify. Ms. Belanger stated that both children are happy and well-adjusted. St. Joseph School has been in operation for more than 58 years and has computers in the classrooms. A project is underway to obtain smart boards for all classrooms. A student from the school was recently a participant in the National Spelling Bee. The school placed first at the Loyola Academic Rally. The school is active in the Louisiana Regional Science and Engineering Fair. The class size is approximately 25 students.
The trial court found that the children are functioning well at St. Joseph School. The court recognized the presumption that Ms. Raley’s decision regarding school placement is in the best interest of the children. The court also noted that the original decision to send the children to St. Joseph School was made by both parents and was incorporated into the original joint custody implementation plan. That plan also required the parties to exchange information with reference to the children’s education. Ms. Raley made the decision to change schools with no input from Mr. Bergeron. The trial court found that the evidence did not establish that another school would provide more for the children at this time. The court noted that St. Joseph School is the only school that these small children have ever attended and stability should be maintained in children’s lives wherever possible. The trial court found that the totality of the evidence supports the conclusion that moving to a different school would not be in the best interest of the children.
_J_2jBased upon this record, we find that the trial court did not abuse its discretion in ruling that the children should remain at St. Joseph School. The evidence shows that both schools have outstanding academic programs and offer numerous excellent opportunities for students. The evidence failed to show that First Baptist Church School was significantly better for the needs of these particular children who are doing well in their current environment. Given the fact that the grandparents are willing to contribute to the costs of their education at St. Joseph School, and the fact that the girls have always attended the school and have done well there, Mr. Bergeron carried his burden of proving that a change of schools at this time is not in the best interest of the children.
CONCLUSION
For the reasons stated above, we affirm the trial court ruling that the parties compromised the amount of the interim child support award due from Mr. Bergeron to provide that his obligation was $750.00 per month. We affirm the trial court judgment changing the joint custody implementation plan to specify that Ms. Raley will remain the domiciliary parent, but the children will spend alternating weeks with each parent. We also affirm that portion of the trial court judgment ordering that the children continue their education at St. Joseph School. We affirm that portion of the trial court judgment specifying that Mr. Bergeron’s permanent child support obligation is $1,126.08 per month. However, we amend the judgment to ^specify that the final child support award is due from the date of signing of the judgment, July 29, 2008. Costs in this court are assessed to Ms. Raley.
AFFIRMED IN PART; AMENDED IN PART; AFFIRMED AS AMENDED.
CARAWAY, J., concurring in part and dissenting in part, with written reasons.

. The record shows that in his answer to Ms. Raley’s rule to modify the child custody implementation plan, Mr. Bergeron specifically points out that the mental health professional appointed by the court recommended a modification to allow the children to stay with each parent on alternating weeks.