WILLIAMS, J.
bln this child custody dispute, the mother, Michele Baker Skipper, appeals a trial court judgment granting the father’s motion to modify custody of the minor child. She also challenges the lower court’s ruling allowing the father to claim the income tax dependency deduction for the minor child every other year. For the following reasons, we amend the trial court’s judgment with regard to child visitation and affirm as amended. Additionally, we reverse the portion of the judgment which would allow the father to claim the income tax deduction every other year.
FACTS
Marcus Joe Skipper (“Mark”) and Michele Baker Skipper (“Michele”) were married on April 28, 2001, and divorced on June 26, 2008. Of the marriage, one child, Jake, was born on February 19, 2003. Jake has been diagnosed with Usher Syndrome, a genetic condition which affects his hearing, vision and mobility. At the time of the hearing, Jake was legally blind and partially deaf, hearing only with the assistance of hearing aids; he also walked with the assistance of a cane. According to the testimony, Jake’s condition will progressively worsen, and he will eventually become totally blind and deaf.
On June 26, 2008, the parties entered into a joint stipulation whereby they agreed to share the joint custody of Jake, with Michele being designated the domiciliary parent. Them visitation schedule provided that Mark would have visitation with Jake every other weekend and two weeks during the summer months. The parties also entered into an agreement regarding holidays and Jake’s birthday. The trial court entered a consent ^judgment, ratifying the joint stipulation. The right to claim Jake as a dependent for state and federal income tax purposes was not mentioned in the joint stipulation/consent judgment.
On March 7, 2011, Mark filed a motion to modify custody, alleging, inter alia: (1) Michele had refused to be flexible with the visitation schedule; (2) Michele had refused to agree to reasonable requests for additional visitation; (3) Michele scheduled events and appointments that conflicted with Mark’s visitation; (4) Michele had *709 refused to allow Mark the opportunity to provide childcare for Jake when she was unable to care for him; (5) Michele had failed to notify Mark about appointments, activities and events concerning Jake. Mark also requested a reduction in child support and to be allowed to claim Jake each year as a dependent on state and federal income tax returns.
In response, Michele filed a rule to increase child support, alleging: (1) the income of both parties had changed; (2) Jake’s monthly expenses had increased due, in part, to his disabilities; (3) daycare costs had increased. Michele also objected to Mark’s request that he be allowed to claim Jake as a dependent for income tax purposes each year.
Prior to the hearing on the motions, the parties reached a consent agreement re: garding child support and expenses for Jake. However, the parties were unable to agree with regard to visitation and the right to claim the income tax dependency deduction.
A hearing was held on August 26, 2011. The evidence established the following: Jake is currently in third grade; Jake is under the care of |.omul tiple doctors in different states; Jake has seven teachers from special services, including a speech therapist, occupational therapist, itinerant hearing teacher, hearing impaired teacher, orientation teacher, mobility teacher and inclusion teacher; Michele is an occupational therapist employed by the Caddo Parish School System; Michele is trained to work with children with disabilities; Michele’s job allows her to be with Jake during the summer months and holidays; Michele’s hours are flexible during the day, enabling her to confer with Jake’s teachers and therapists; Mark is employed as a pharmacist at Walgreens; his work schedule varies, requiring him to work all hours of the week, including evenings, weekends and holidays; Mark has never been involved in Jake’s schooling and has never met any of his teachers or therapists. Michele also testified that the loss of the right to claim the tax exemption for Jake would cost approximately $2,000 per year. Mark produced no evidence with regard to the tax exemption.
At the conclusion of the hearing, the trial court granted Mark’s motion to modify the visitation schedule. The court reviewed the factors set forth in LSA-C.C. art. 134, and stated:
[Michele,] and looking at the days [t]hat you proposed, [Marcus will] have approximately four to four and a half days per month out of thirty days. That is not sufficient under the United States Constitution; that is not sufficient under these statutes. That is not sufficient under the codes and under the case law. I mean, four and a half days out of thirty days. That does not foster a relationship, especially as close as the parties live. [H]e has the right to be a father and that’s what the constitution says. And he has the right to exercise those abilities, and until he cannot exercise those abilities then he is given the opportunity to exercise those abilities.
[[Image here]]
He has the right to be a father. He has the right to participate. You said in your testimony that the child’s condition will be that he cannot see in the future and that he cannot hear in the future. The child has the right to remember your voice and the right to remember your face as much as he as the right to remember his father’s voice and his father’s face. And four days a month is not going to do it[.]
⅜ * *
The court ordered visitation as follows:
*710 1. The visitation shall follow [Marcus]’s work schedule. [Mareus]’s work schedule is based on a 28 day cycle that rotates throughout the year. [Marcusj’s visitation shall begin on the first day of his 28 day cycle which is Wednesday, May 18, 2011 (Day 1) at 4:00 p.m. He shall keep the minor child overnight and return him to school the following morning. He shall pick up the minor child on Saturday, May 28, 2011 (Day 11) at 10:00 a.m. and return the minor child on Monday, May 30, 2011 (Day 13) to school. During the summer time only, he shall pick up the minor child on Thursday June 2, 2011 (Day 16) at 10:00 а.m. and return the minor child the following day at 4:00 p.m. He shall pick up the minor child Friday, June 10, 2011 (Day 24) at 4:00 p.m. through June 14, 2011, which marks the end of his 28 day cycle. This cycle shall rotate throughout the year, subject to the holiday and summer visitation set forth herein. As part of the new cycle, he will keep the minor child from June 14, 2011 through Thursday, June 16, 2011 at which time he will return the minor child to school. A copy of the visitation schedule for the remainder of 2011 is attached hereto as Exhibit “A”.
* * *
б. If MARCUS JOE SKIPPER has to work during any of his periods of visitation with the minor child, the minor child shall be returned to MICHELE BAKER SKIPPER at the normal exchange location.
[[Image here]]
The court then established very specific visitation for the summer months, Thanksgiving holiday and Christmas holiday. The court also ordered Mark to return Jake to Michele if he was required to work during any of his |fischeduled visitation periods. Additionally, the court ordered both of the parties to alternate claiming Jake as a dependent on federal and state income tax returns.
Michele appeals.
DISCUSSION
Michele contends the trial court abused its discretion in granting the motion to modify custody. She argues that the visitation schedule centers around Mark’s work schedule, rather than around the best interests of the child.
It is well settled in our statutory and jurisprudential law that the paramount consideration in any determination of child custody is the best interest of the child. LSA-C.C. art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731; Semmes v. Semmes, 45,006 (La.App.2d Cir. 12/16/09), 27 So.3d 1024; Shivers v. Shivers, 44,596 (La.App.2d Cir.7/1/09), 16 So.3d 500. The court is to consider all relevant factors in determining the best interest of the child. LSA-C.C. art. 134.[1]
*711 1 fiThe trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in LSA-C.C. art. 134, but should decide each case on its own facts in light of those factors. Semmes, supra; Robert v. Robert, 44,528 (La.App.2d Cir.8/19/09), 17 So.3d 1050, writ denied, 2009-2036 (La.10/7/09), 19 So.3d 1; Bergeron v. Bergeron, 44,210 (La.App.2d Cir.3/18/09), 6 So.3d 948. These factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Id.
LSA-R.S. 9:335(A)(2)(b) provides that, to the extent feasible and in the best interest of the child, physical custody of the child should be shared equally. However, the law is clear: substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Semmes, supra; Stephenson v. Stephenson, 37,323 _y(La.App.2d Cir.5/14/03), 847 So.2d 175.
The trial court has vast discretion in deciding matters of child custody and visitation. Semmes, supra; Slaughter v. Slaughter, 44,056 (La.App.2d Cir.12/30/08), 1 So.3d 788; Gaskin v. Henry, 36,714 (La.App.2d Cir.10/23/02), 830 So.2d 471. Therefore, the trial court’s determination will not be disturbed on appeal, absent a clear showing of an abuse of discretion. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Semmes, supra; Slaughter, supra. As long as the trial court’s factual findings are reasonable in light of the record when reviewed in its entirety, the appellate court may not re-verse even though convinced it would have weighed the evidence differently if acting as the trier of fact. Id.
In the instant case, Michele and Mark testified that Jake is a bright, happy and well-adjusted child, despite his disabilities. Both Michele and Mark agreed that they are both good parents to Jake.
Michele testified that a custody arrangement whereby she and Mark would exchange custody of Jake several times a week would be difficult and detrimental to Jake’s routine and academic progress. She explained the complexity of Jake’s needs as a disabled child and believed that Jake’s need for structure and stability was paramount. Michele also testified that she is very active in Jake’s school-related activities, and stated that she often meets with his teachers as much as three times a week to ensure Jake’s physical and academic success. Michele was complimentary of Mark’s relationship with Jake and stated, “I’m not going to keep Mark away from Jake.” Michele further testified that her schedule is more flexible than 18Mark’s schedule, which rotates on a monthly basis and requires him to work various shifts, including some weekends and evenings. Michele was adamant about maintaining the every other weekend visitation schedule and opined that Mark had other opportunities to spend time with Jake but had elected not to do so. Michele stated:
Mark has flexibility to come to any of Jake’s extracurricular activities, any in-school programs, I mean, we have joint custody, he can walk in that front door just like I do. And he can go with Jake on kite day, and field day, and extra *712 recess day. Has he gone to any of those in his three years of education? Not that I’m aware of.
Mark testified that he was no longer satisfied with being limited to spending every other weekend with Jake. He stated that initially, Michele allowed him to see Jake on his days off during the week, but she had stopped doing so. Mark also testified that Michele had failed to notify him of Jake’s extracurricular activities and would not provide him with information regarding her vacation plans with Jake. He stated that he is aware of Jake’s condition and limitations, and he is willing to accommodate those special needs at his home. Mark admitted that he had never attended any Individualized Education Program (“IEP”) meetings at Jake’s school, and blamed Michele for either failing to notify him of the meetings in advance or declining his offers to “go with her or meet her there.” He also stated that Michele withholds information from him concerning Jake’s medical needs, schooling and extracurricular activities. However, on cross-examination, Mark admitted that he has never been prevented from participating in Jake’s schooling or from calling and/or meeting with his ^teachers and therapists.
 We have reviewed this record in its entirety and are convinced that Michele and Mark are both fit and loving parents. However, the paramount goal in custody cases is reaching a decision which serves the best interests of the child. We find that the visitation schedule set forth by the trial court to “follow [Marcus’] work schedule” is not in the best interest of Jake. The schedule is tailored solely to Mark’s work schedule, and demonstrates no regard for Jake’s needs and activities. However, we also find that the previous visitation schedule, which allowed Mark to visit with Jake a mere four days per month is not in Jake’s best interest. Accordingly, we amend the trial court’s visitation order to provide that Mark shall have visitation with Jake every other weekend, from Friday evening, through Tuesday morning, when he returns the child to school. Michele shall pick the child up from school every other Tuesday afternoon. If Mark is required to work during any of his periods of visitation, or for any reason cannot transport the child to or from school during his periods of visitation, Mark shall return the child to Michele, with advance notice, at the normal exchange location.
Michele also contends the trial court erred in awarding the dependency deduction for income tax purposes to Mark every other year. She argues that Mark did not put forth any evidence to demonstrate that he would benefit from claiming the deduction.
LSA-R.S. 9:315.18 provides, in pertinent part:
A. The amounts set forth in the schedule in R.S. [in9:315.19[2] presumes that the custodial or domiciliary party has the right to claim the federal and state tax dependency deductions and any earned income credit. However, the claiming of dependents for federal and state income tax purposes shall be as provided in Subsection B of this Section.
B. (1) The non-domiciliary party whose child support obligation equals or exceeds fifty percent of the total child support obligation shall be entitled to claim the federal and state tax dependency deductions if, after a contradicto *713 ry motion, the judge finds both of the following:
(a) No arrearages are owed by the obli-gor.
(b) The right to claim the dependency deductions or, in the case of multiple children, a part thereof, would substantially benefit the non-domiciliary party without significantly harming the domiciliary party.
In this case, the trial court determined that Mark pays “over 50%” of the child support obligation. However, the statute clearly provides that the non-domiciliary parent, is entitled to claim the dependency deduction if the court finds that the right to claim the deduction would substantially benefit the non-domiciliary parent without significantly harming the domiciliary parent. Here, Mark failed to present any evidence to prove that the income tax deduction would substantially benefit him, without substantially harming Michele. See, Semmes, supra; Neill v. Neill, 33,398 (La.App.2d Cir.6/21/00), 764 So.2d 235. Accordingly, we find that the trial court erred in awarding the right to claim the income tax deduction to Mark every other year, and that portion of the judgment is hereby reversed.
^CONCLUSION
For the above reasons, the judgment of the trial court is amended with regard to child visitation and is affirmed as amended. The portion of the judgment which would allow the father to claim the income tax deduction every other year is hereby reversed. Costs are assessed to both parties.
AMENDED IN PART; AFFIRMED AS AMENDED; REVERSED IN PART.

. LSA-C.C. art. 134 provides, in pertinent part:
Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
*711 ís) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.

. The schedule of support to be used for determining the basic child support obligation is set forth in LSA-R.S. 9:315.19.