DREW, J.
11 This is an appeal of a trial court judgment which reduced the physical custody enjoyed by a father with his three children. We reverse and render.
FACTS
Michael Barber and Taneca Green became romantically involved in 2005 and from this relationship three children were born: twins born in the spring of 2007, and another child born in the fall of 2008. The relationship between Barber and Green eroded drastically in late 2010 and in 2011 and, without question, completely ended not later than early 2012, at which time Green and her children moved out of Barber’s home.[1]
During the spring of 2012, the parties agreed to an alternating “week on/week off’ physical custody arrangement, pending the conclusion of this domestic litigation. A two-day custody trial was held in July of 2013, with testimony from 15 witnesses, some of whom testified that the shared interim custody order had worked well. Each parent testified, notably, that the other was a good parent.
Leigh Ann O’Brien, the court-appointed licensed certified social worker (“LCSW”), reported that the weekly arrangement was “working well for the minor children.” The LCSW further recommended that the father be named domiciliary custodian.
Nonetheless, the trial court granted joint custody, named the mother as domiciliary parent, and reduced Barber’s visitation rights to these:
(1) every other weekend from Thursday afternoon to Monday morning, with the children to be returned to their mother during Barber’s [ ^working hours;
(2) Wednesday or Thursday visitation during the father’s off week;
(3) alternating major holidays; and
(4) week on/week off during summer vacation, with the children returned to the mother when the father worked 24-hour shifts during that visitation.
We agree with Barber that the trial court, on these unique facts, abused its great discretion by:
• not awarding physical custody on a rotating weekly basis;
• limiting the father’s periods of visitation, a ruling not in the best interest of the children; and
*1225 • incorrectly interpreting one of our previous cases.
As we find the judgment insupportable on this record, we amend and render, effectively returning to the previous weekly rotation.
ORAL REASONS FOR JUDGMENT
Three weeks after trial, the trial court reviewed in open court the factors listed in La. C.C. art. 134,[2] finding most to be a wash between these |svery qualified parents, with three exceptions:
• The mother enrolled the daughter in an educational daycare program, but the father did not take the child to the daycare when he had her with him. The trial court found that this factor favored the mother.
• The trial court leaned “a little toward” the mother in the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the children and the other party.
• As to the responsibility for the care and rearing of the children by each party, the trial court favored the mother.[3]
After this recitation, the trial court said the 12 factors were “almost pretty much equal in weighing,” but weighed in favor of the mother.[4]
Accordingly, the trial court announced these rulings in open court:
(1) that Barber and Green share joint custody of the three children;
(2) that Green be named the domiciliary parent; and
(3) that a revised visitation/physical custody plan be established.
Barber requests relief from only the third holding of the trial court, in that he feels unduly penalized solely because of his shift work as a fireman.
Indeed, the trial court stated the problem he had with the father was his work *1226 schedule, noting with disapproval that when Barber worked during his periods of physical custody, his mother[5] kept the children. The trial court stated that this was time that the children should be spending with their own mother, not a third party. The trial court also disapproved of all the | ¿“shifting” with the stipulated pretrial physical custody schedule.[6]
ISSUES PRESENTED BY BARBER
(1) Did the trial court err in failing to award shared physical custody of the children on a week on/week off basis?
(2) Was the physical custody and visitation schedule granted the father contrary to the best interest of the children?
(3) Did the trial court incorrectly apply Skipper v. Skipper, 46,935 (La.App.2d Cir.2/1/12), 86 So.3d 707, to deny a shared custody judgment because the father works shifts as a firefighter?
We find that each question must be answered in the affirmative.
FATHER’S ARGUMENTS
Barbers argues on appeal that:
• as a firefighter, he works eight to 10 separate 24-hour shifts per month, giving him 20 to 23 days a month to devote to his children;
• the week on/week off interim custody arrangement worked well;
• the weekly rotation was approved by the mental health professional;
• he is being penalized because of his shift work as a public safety employee;[7]
• the trial court misapplied our holding in Skipper, supra;[8]
|s* the fact that a parent works a rotating shift schedule should not be an absolute bar against an equal shared custody arrangement;
• the instant visitation schedule does not meet the “substantial time” mandate of the Louisiana Legislature;[9]
• the trial court’s ruling is clearly wrong; and
*1227 • the children’s best interest is better served by reverting to the week on/week off schedule which everyone agreed was working well.
MOTHER’S ARGUMENTS
Green asks us to affirm the trial court, in that the ruling is not manifestly wrong or a clear abuse of discretion. She feels that the judgment gives substantial time to Barber while minimizing the shifting of the children between their parents. Green further notes that:
• Barber himself testified at trial that it caused problems for the children to have to pack up and move week to week;
• when Barber worked his 24-hour shifts, the children stayed with his brother[10] and their 80-year-old mother;
• the factors in La. C.C. art. 134 are not exclusive and the weight given to each is within the discretion of the trial court;
• the trial court’s judgment should not be disturbed absent an abuse of discretion; and
• continuity and stability of environment are important factors, and the Rtrial court assured this with its judgment.[11]
REASONING
The trial court’s visitation schedule is not justified by this record and is not in the best interest of the children. We reverse and reestablish the weekly rotation in existence before the trial was held.
We recognize that shared custody does not require strict adherence to an inflexible 50-50 calculation of the number of minutes each parent enjoys with the children. We know that this is the rare case allowing for weekly rotation. Geography, schooling, education, culture, extended family, and parenting skills are not a problem here. Both parents love these children and are loved by these children. Each parent is gainfully employed.
In no way should this opinion be considered as requiring the necessity of precisely equal time, particularly in cases where one parent does shift work — far from it. Unlike the majority of cases, a weekly rotation, under these unique facts, is clearly in the best interest of these children, for the following four reasons:
(1) The trial court misapprehended our ruling in Skipper, supra, both factually and legally.[12] The instant situation is radically different from the facts in Skipper, and our court never held that a parent’s work schedule could not be a factor in the calculus in the unscientific task of establishing physical custody scenarios that best serve interests of the involved children. We said in Skipper that a parent’s work schedule could not be the sole factor in the establishment of a physical custody / visitation plan.
(2) The trial court refused to follow the LCSWs recommendation for |7shared custody strictly because of Barber’s shift work as a fireman.[13] The LCSW, *1228 in her report to the court, did more than merely give her approval to the weekly rotation that was in place. She also recommended that the father be the domiciliary parent.[14] Solely because of Barber’s work schedule as a public servant, the trial court ignored the considered recommendation of the LCSW. It is insupportable that this public servant be punished because of his profession and the hours attendant upon his efforts to protect and serve.
(3) The visitation plan adopted by the trial court is actually more complicated, with much more “shifting” than the simple weekly rotation plan in place before the trial. The previous plan worked fine.[15] There will be far less confusion with alternating weekly periods of physical custody.
(4) We cannot agree with the trial court’s unimpressed and discounted viewpoint as to the value of the grandchildren spending time with a grandmother. As a firefighter, the father works eight to ten 24-hour shifts each month, requiring him to rely on his willing family. The trial court noted that it was not ideal for the children to be cared for by “a third party”[16] instead of a parent. We acknowledge that parents should be the guiding influences in the lives of young children, but a grandparent is far more dear than merely a “third party.” It is a blessing that extended family members, on both sides, are available for |8these grandchildren, to help them cope with the complications attendant to the unraveled and unraveling domestic situation between their parents.
For all of the above reasons, we must reverse the trial court’s judgment relative to physical custody of these children.[17]
DECREE
The judgment awarding joint custody and naming the mother as domiciliary parent is AFFIRMED.
The visitation plan established by the trial court is REVERSED.
We hereby REESTABLISH a plan of shared physical custody on a weekly basis *1229 for each parent, with alternating major holidays.
All costs of court, trial and appellate, are to be split evenly between the parties.

. Barber testified that Green left the home in August of 2010. Green testified that she left Barber's home briefly in August of 2010, but only finally left the domicile in February of 2012. The trial court credited Green’s testimony on this issue.

.Art. 134. Factors in determining child’s best interest
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.

. When the children were hospitalized, Green stayed overnight; Barber did not.

. We disagree with the trial court's finding equally in favor of both parties relative to La. C.C. art. 134(4). The children had been in the father’s home almost exclusively in the three years prior to the alternating weekly arrangement was entered. In the year and a half prior to trial, the father shared almost equal time with the children. This factor should have militated in favor of Barber.

. The paternal grandmother of the children.

. The visitation schedule imposed by the trial court notably has more imbedded "shifting” than did the previous weekly rotation.

. The father quoted this statement from the trial court: "I think you are a good father, but your work schedule will just not allow a shared custody situation. The Second Circuit Court of Appeals will not allow me to arrange visitation around your schedule.”

. Skipper, supra, presented substantially different facts. That child had very serious health and disability issues resulting from a genetic disorder, and suffered increasingly severe hearing and vision loss along with impaired mobility. Three years after the initial custody agreement, the father sought to modify custody and increase his visitation.
Factors established at trial were the child was in the third grade and under the care of seven specialists in different states along with speech, occupational, and hearing therapists plus an itinerant hearing teacher and teachers for hearing impaired, orientation, mobility, and inclusion. The mother in Skipper, supra, was an occupational therapist who was trained for these situations. Her work hours permitted her to be with her child during summer and holiday breaks and her flexible work hours enabled her to easily confer with the child’s teachers and therapists.
That father was a pharmacist whose job required work during evenings, weekends, and holidays. The father was not involved with the child’s schooling, and he had never met with teachers or therapists.
After the trial court crafted a visitation plan based upon the father's work schedule, this court found the visitation schedule was not in the child’s best interest, since it was tailored solely to the father’s work and did not consider the minor’s needs and activities. The Skipper court did not hold that a parent's rotating work schedule could never be considered in fashioning a custody arrangement in a child's best interests.

.See La. R.S. 9:335(A)(2)(b).

. Green stresses that Barber's brother had health issues and had no drivers license.

. Remarkably, this record implies just the opposite: stability and continuity considerations here clearly favor the father.

. We are aware that our task is to review the judgment itself, not the reasons for the judgment. Nonetheless, reasons for judgment can help explain a trial court’s rulings. See Woo-ley v. Lucksinger, 2009-0571 (La.4/1/11), 61 So.3d 507.

.The transcript reveals these two startling statements made by the trial court to Barber, at the time of the ruling in open court:
• "Although Mrs. O’Brien indicates that a shared custody situation would work well, I have to disagree with her only because of your work schedule." (Our emphasis.)
*1228 • "And as I indicated, but for your work schedule this would be a perfect case for shared custody.” (Our emphasis.)

.Leigh Ann O’Brien, LCSW, issued a thorough and impressive report about this family, ending with this paragraph of summation:
In regards to my final recommendations, I found that the shared custody arrangement in which the parties alternate week on/off is working well for the minor children. I found that Michael Barber and Taneca Green could individually provide a stable and secure home environment for the children. I found that each parent is vital to the emotional well being of the minor children. I would recommend that Michael Barber be designated domiciliary parent. I found that he would continue to make appropriate decisions for the best interest of the children. I would recommend the shared custody arrangement would remain in place through the summer months.

. We recognize that Barber testified in opposition to the weekly rotation.

. Barber’s works a five-day shift with one 24-hour day on and the next 24-hour period off. This situation will require some flexibility and cooperation in enhancing the physical custody of both parents with these children. It must be noted that shift work can actually offer some advantages in nurturing a close, meaningful, and quality relationship between children and a parent in Barber's situation. Barber has 20 days off per month, which should enhance the blossoming of his relationship with these children.

. Even though we find an abuse of the trial court’s discretion, it does not diminish our appreciation for the kind, thorough, and attentive manner in which the trial was handled.